Arthur Garcia **SANCHEZ**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 04–96–00140–CR.

Court of Appeals of Texas,
San Antonio.

May 20, 1998.

Stephanie L. Stevens, Mark Stevens, San Antonio, for appellant.

Daniel Thornberry, Asst. Criminal Dist. Atty., San Antonio, for appellee.

Before HARDBERGER, C.J., and STONE and JOHN F. ONION, Jr.,[1] JJ.

## OPINION

JOHN F. ONION, Jr., Justice (Assigned).

This appeal is taken from a conviction for official oppression. *See* TEX. PENAL CODE ANN. § 39.03(a)(3), (c) (Vernon 1994).[2] Appellant, Arthur Garcia Sanchez, was indicted for subjecting another to sexual harassment, a Class A misdemeanor.[3] The jury found appellant guilty and assessed his punishment at confinement in the county jail for one year and a fine of $3,000. The jury, however, recommended community supervision.[4] The imposition of the sentence was suspended and appellant was placed on community supervision subject to certain conditions.

## POINTS OF ERROR

Appellant advances seven points of error. In two points of error, appellant challenges the constitutionality of the statute under which he was convicted, contending that the statute is vague on its face and, as applied to him, in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution. These points are also inclusive of a First Amendment violation. We sustain these points of error. We do not

1. Assigned to this case by the Chief Justice of the Supreme Court of Texas.

2. The indictment alleged the offense occurred between August 1, 1994, and February 15, 1995. Section 39.03 became effective September 1, 1994. Therefore, the former statute (§ 39.02) was also implicated. *See* Act of May 24, 1973, 63rd Leg., R.S., ch. 399, 1973 Tex. Gen. Laws 883, 953, *as amended by* Act of May 28, 1989, 71st Leg., R.S., ch. 1217, § 1, 1989 Tex. Gen. Laws 4934, 4935 (adding subsection 39.02(a)(3), (c)), *as amended by* Act of March 25, 1991, 72nd Leg., R.S., ch. 16, § 19.01(34), 1991 Tex. Gen. Laws 244, 369, *as amended by* Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 1.01, 1993 Tex. Gen. Laws 3586, 3674 (current version of § 39.03(a)(3), (c) to which reference will be made throughout instant opinion).

3. The indictment charged official oppression which is within the jurisdiction of the district court. TEX. CONST. art. V, § 8; TEX.CODE CRIM.

PROC. ANN. art. 4.05 (Vernon Supp.1998); *Emerson v. State,* 727 S.W.2d 267, 269 (Tex.Crim.App. 1987). Official oppression is within the ambit of official misconduct. *See Emerson,* 727 S.W.2d at 268–69. At least, the district court had concurrent jurisdiction with the county court over the offense. *See Loughry v. State,* 926 S.W.2d 382, 385 (Tex.App.—Fort Worth 1996, pet. ref'd); *Campos v. State,* 783 S.W.2d 7, 8 (Tex.App.—Houston [14th Dist.] 1989, pet. ref'd).

4. The statutory term "community supervision," TEX.CODE CRIM. PROC. ANN. art. 42.12 (Vernon Supp. 1998), is used interchangeably with the term "probation." *See Rodriguez v. State,* 939 S.W.2d 211, 220 n. 12 (Tex.App.—Austin 1997, no pet.). The constitutional basis for "community supervision" is article IV, section 11a of the Texas Constitution which authorizes "probation," using that term.

find it necessary to enumerate the other points of error.

The indictment, as amended, alleged in pertinent part that:

on or about the 1st day of August, A.D., 1994, through on or about the 15th day of February, A.D., 1995, ARTURO SANCHEZ, while acting under color of his office as a public servant, to wit: an officer, employee and agent of government, namely: Chairman and Board Member of the Board of Trustees of VIA METROPOLITAN TRANSIT, did intentionally subject DIANE GONZALEZ to sexual harassment, namely: unwelcome sexual advances, requests for sexual favors, and other verbal and physical conduct of a sexual nature, by stating to DIANE GONZALEZ (hereinafter referred to as "COMPLAINANT") to the effect: that if COMPLAINANT did not have a sexual affair with him he would fire her; that to get an office, a secretary and a raise COMPLAINANT must have a sexual affair with him; that he had a sexual affair with another VIA employee and he would have a sexual affair with COMPLAINANT also; that he would have a sexual affair with COMPLAINANT, that COMPLAINANT should have a sexual affair with him because people already thought they were having a sexual affair; that COMPLAINANT must put on lipstick; that he would like COMPLAINANT to wear low-cut dresses; that he would like COMPLAINANT to wear black pantyhose and silk blouses because she looked better in them; that upon seeing a bruise on COMPLAINANT'S leg, that he asked COMPLAINANT if she was bruised from rough sex with her husband, and that he liked rough sex; and by touching DIANE GONZALEZ with his hand on her face, submission to which was explicitly and implicitly made a term and condition of DIANE GONZALEZ's exercise and enjoyment of her rights, privileges, powers and immunities [5]

. . . .

### FACTS

The facts are not absolutely essential to our disposition of the instant case on constitutional grounds, but are briefly mentioned as background.[6]

[5]. The indictment is clearly no model. *Cf.* 7 Michael McCormick, Thomas Blackwell, Betty Blackwell, *Criminal Forms and Trial Manual*, § 20.03 at 157–58 (Texas Practice 1995).

[6]. We need not set out the facts in great detail in view of our disposition of the case. The complainant Gonzalez was hired by the Board of Trustees of the Via Metropolitan Transit in San Antonio as an assistant to the Board in securing federal grant money. She was placed in the Public Affairs Division of Via, with instructions to report to appellant, the Board Chairman. The allegations of the indictment were chiefly supported by Gonzalez's testimony since the matters arose in private conversations. Gonzalez commenced taping her conversations with appellant in December 1994 or January 1995. The tapes do not support the indictment's allegations. Several witnesses heard appellant tell Gonzalez to put on lipstick or makeup. The grand jury testimony by appellant was introduced. He acknowledged that on an occasion he told Gonzalez to put on lipstick because she looked pale.

Gonzalez acknowledged that she had been hired by the Board and could only be fired by the Board, but knew appellant as Chairman, had great influence and that appellant had so informed her. There was testimony that Gonzalez traveled by plane with appellant to a transportation conference in Washington, D.C., in September 1994, going earlier and coming back later than other representatives of Via at the conference. Gonzalez was instructed to attend after-work meetings at the bar at the Mi Tierra Restaurant several nights a week. Other evidence showed that appellant frequently called Gonzalez at her home at night and that there was concern on the part of one Board member about the relationship. Other testimony indicated that appellant prevented Gonzalez from attending some Board meetings and dictated to her which employee or employees with whom she could not have lunch.

There was no question that Gonzalez had demanded, requested, or expressed a desire repeatedly for a raise, an enclosed office, and a private secretary. One Board member testified that before Gonzalez started her $52,000 job, she requested a raise in order to influence the individuals with whom she would come into contact in the course of her employment. The request was denied. When Gonzalez commenced her employment, there was only one enclosed office in the Public Affairs Division which at the time was occupied by appellant. A smaller enclosed office was built for appellant and the larger one was assigned to Tom Campos, a staff member, by the general manager of Via and appellant. The secretary whom Gonzalez shared with others testified that she typed only three letters for Gonzalez in the eight months or so that Gonzalez was employed by Via.

## THE VAGUENESS ISSUE

Appellant urges his "on its face" and "as applied" vagueness attacks upon section 39.03 under which he was convicted, contending violations of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.[7] Appellant has included in his argument a claim that the statute in question is also overbroad and impinges on the freedom of speech guaranteed by the First Amendment to the United States Constitution, which amendment is applicable to the states through the Fourteenth Amendment. *Gitlow v. New York,* 268 U.S. 652, 666, 45 S.Ct. 625, 69 L.Ed. 1138 (1925); *Olvera v. State,* 806 S.W.2d 546, 548 n. 2 (Tex. Crim.App.1991). In the area of First Amendment rights, stricter standards of permissible statutory vagueness apply to a statute. The overbreadth and vagueness doctrines are conceptually distinct, but in the First Amendment context they tend to overlap since statutes are often overly broad because their language is vague about what behavior is proscribed. *See* 16A C.J.S. *Constitutional Law,* § 459 at 483 (1984).

"Whenever an attack upon the constitutionality of a statute is presented for determination, we commence with the presumption that the statute is valid and that the legislature has not acted unreasonably or arbitrarily in enacting the statute." *Ex parte Granviel,* 561 S.W.2d 503, 511 (Tex. Crim.App.1978); *Ex parte Anderson,* 902 S.W.2d 695, 698 (Tex.App.—Austin 1995, pet. ref'd). The burden rests upon the individual challenging the statute to establish its unconstitutionality. *Granviel,* 561 S.W.2d at 511. The statute must be upheld if a reasonable construction can be ascertained which will render the statute constitutional and carry out the legislative intent. *Ely v. State,* 582 S.W.2d 416, 419 (Tex.Crim.App.1979).

A criminal statute must be sufficiently clear in at least three respects. First, a person of ordinary intelligence must be given a reasonable opportunity to know what is prohibited. *Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972); *Long v. State,* 931 S.W.2d 285, 287 (Tex.Crim.App.1996). "The rationale for this is obvious: crimes must be defined in advance so that individuals have fair warning of what is forbidden." *Bynum v. State,* 767 S.W.2d 769, 773 (Tex.Crim.App.1989). A lack of notice poses a "trap for the innocent . . . ," *United States v. Cardiff,* 344 U.S. 174, 176, 73 S.Ct. 189, 97 L.Ed. 200 (1952), and "violates the first essential of due process." *Connally v. General Constr. Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926). Second, the criminal law must establish determinate guidelines for law enforcement. *Long,* 931 S.W.2d at 287. "A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with

Other evidence indicated that Gonzalez was constantly inquiring about appellant's whereabouts, spent a great deal of time in appellant's office with the door closed, seemed happy and "jolly" around appellant, and fawned over him. She was always offering to take appellant to lunch or to drive him places. Appellant had a disability as a result of having polio when he was a child. Some witnesses testified that Gonzalez followed appellant around the office, even waiting for him outside the men's restroom. On one occasion, appellant was heard to tell Gonzalez that "he didn't need a shadow, that he had two at home, his mother and his dog." Gonzalez was also seen playing "patty-cake" with appellant at the bar at Mi Tierra.

There was evidence of dissension in the office between Gonzalez and other women employees, some of it arising from Gonzalez's insistence that she was another employee's supervisor. Gonzalez was to complete a legislative agenda project for the Board regarding federal grant money. The report was delayed month by month and,

when it was tendered to the Board in January 1995, it was found unacceptable. There was evidence that the Board was generally becoming dissatisfied with Gonzalez's work.

Gonzalez terminated her employment on February 15, 1995, and filed a EEOC complaint. Her husband and brother, both lawyers, presented a 1.2 million dollar claim to Via which was refused. A civil suit was filed and the instant criminal indictment came later.

The trial court's jury charge tracked the indictment but submitted each allegation disjunctively authorizing conviction on any one of the allegations.

7. Appellant does not advance any argument based on the Texas Constitution. We need not consider such contention. *See Corwin v. State,* 870 S.W.2d 23, 27 n. 2 (Tex.Crim.App.1993); *Morehead v. State,* 807 S.W.2d 577, 579 n. 1, (Tex.Crim.App.1991); *McCambridge v. State,* 712 S.W.2d 499, 501–02 n. 9 (Tex.Crim.App.1986).

the attendant dangers of arbitrary and discriminatory application." *Grayned*, 408 U.S. at 108–09, 92 S.Ct. 2294 (emphasis in original). "Where inherently vague statutory language permits selective law enforcement, there is a denial of due process." *Smith v. Goguen*, 415 U.S. 566, 575, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974). Either the lack of notice or lack of guidelines for law enforcement is an independent ground for finding a statute void for vagueness. *Adley v. State*, 718 S.W.2d 682, 685 (Tex.Crim.App.1985).

■ Third, where First Amendment's freedoms are implicated, the law must be sufficiently definite not to abridge the right of free speech, but also to avoid chilling protected expression. *Grayned*, 408 U.S. at 109, 92 S.Ct. 2294. "When a statute is capable of reaching First Amendment freedoms, the doctrine of vagueness demands a greater degree of specificity than in other contents." *Kramer v. Price*, 712 F.2d 174, 177 (5th Cir.1983), *rehearing en banc granted*, 716 F.2d 284 (5th Cir.1983), *grant of relief aff'd*, 723 F.2d 1164 (5th Cir.1984). Greater specificity is required to preserve adequately the right of free expression because uncertain meanings inevitably lead citizens to steer far wider of the unlawful zone than if the boundaries of the forbidden areas were clearly marked. *Long*, 931 S.W.2d at 288 (quoting *Grayned*, 408 U.S. at 109, 92 S.Ct. 2294). First amendments are intertwined with the vagueness issue. *Long*, 931 S.W.2d at 288.

### THE STATUTE

The official oppression statute criminalizes certain acts by a public servant acting under the color of his office or employment. TEX. PENAL CODE ANN. § 39.03 (Vernon 1994). The statute provides:

(a) A *public servant acting under color of his office or employment commits an offense if he:*

(1) intentionally subjects another to mistreatment or to arrest, detention, search, seizure, dispossession, assessment, or lien that he knows is unlawful;

(2) intentionally denies or impedes another in the exercise or enjoyment of any right, privilege, power, or immunity, knowing his conduct is unlawful; or

(3) *intentionally subjects another to sexual harassment.*

(b) For purposes of this section, a public servant acts under color of his office or employment if he acts or purports to act in an official capacity or takes advantage of such actual or purported capacity.

(c) *In this section, "sexual harassment" means unwelcome sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature, submission to which is made a term or condition of a person's exercise or enjoyment of any right, privilege, power, or immunity, either explicitly or implicitly.*

(d) An offense under this section is a Class A misdemeanor.

(emphasis added).

Subsections (a)(3) and (c) were first added to the statute in 1989 [8] and it is under these provisions that appellant was prosecuted and it is these provisions which appellant contends are unconstitutional, vague and overbroad.

Section 39.03 applies only to a "public servant," which is a far more expansive term than a person who is simply elected, appointed, or employed in a public office. *See* TEX. PENAL CODE ANN. § 1.07(a)(41) (Vernon 1994).[9] Such public servant is prohibited

8. See note 2.

9. "Public servant" means a person elected, selected, appointed, employed, or otherwise designated as one of the following, even if he has not yet qualified for office or assumed his duties:

(A) an officer, employee, or agent of government;

(B) a juror or grand juror; or

(C) an arbitrator, referee, or other person who is authorized by law or private written agreement to hear or determine a cause or controversy; or

(D) an attorney at law or notary public when participating in the performance of a governmental function; or

(E) a candidate for nomination or election to public office; or

(F) a person who is performing a governmental function under a claim of right although he is not legally qualified to do so.

TEX. PENAL CODE ANN. § 1.07(a)(41) (Vernon 1994).

from subjecting "another" to sexual harassment. "Another" means "a person other than the actor." TEX. PENAL CODE ANN. § 1.07(a)(5) (Vernon 1994); *Bryson v. State*, 807 S.W.2d 742, 746 (Tex.Crim.App.1991). A "person" means "an individual, corporation, or association." TEX. PENAL CODE ANN. § 1.07(a)(38) (Vernon 1994). It is clear that section 39.03(a)(3)(c) includes both genders within the term "another." Repeated acts or a course of conduct is not required, one act would constitute a violation of the statute.

Section 39.03(a)(3) must be read in light of the statutory definition of sexual harassment in subsection (c) which provides: "In this section 'sexual harassment' means unwelcome sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature, submission to which is made a term or condition of a person's exercise or enjoyment of any right, privilege, power, or immunity, either explicitly or implicitly." It has been held that this statutory definition includes the specific alternative manner and means of committing the crime proscribed by section 39.03(a)(3). *State v. Edmond*, 933 S.W.2d 120, 129–30 (Tex.Crim.App.1996). The essential element of "sexual harassment" must be proved by alternative sub-elements in order to establish an offense.

Appellant contends that almost every word in subsection (c) is inherently vague, giving no fair notice what is prohibited and furnishing no guidelines for law enforcement to avoid selective prosecution. Appellant raises some questions and others arise from the face of subsection (c). What are "advances" or "favors?" What makes them sexual? Does a wink of an eye, a simple smile, a compliment, the placing of a rose in a vase, an invitation to lunch, or a ride home qualify? What enormous range of conduct is contemplated by the catch-all phrase "or other verbal or physical conduct of a sexual nature?" Does "unwelcome" apply to "requests for sexual favors" and "other verbal and physical conduct of a sexual nature" as it does to "sexual advances?" Must the potential offender know in advance that his conduct is unwelcomed or unlawful? Is there no offense if the sexual conduct is welcomed by the recipient? Is the lawfulness of the accused's act or omission determined by each recipient's subsequent emotional reaction on a case-by-case basis? Whose sensitivities are involved or from whose perception is the act to be viewed?

What exactly does "submission" mean under the statute? What constitutes an "implicit" term or condition? Are all these matters to be determined objectively or subjectively? What is contemplated by the expansive phrase "a person's exercise or enjoyment of *any* right, privilege, power, or immunity?" Is the phrase limited to a recipient's rights, privileges, powers, or immunities in existence at the time of the alleged sexual conduct? Does it incorporate the potential enlargement of such matters or the creation of new rights, privileges, etc., if within the scope of the accused's power? Does the term "a person's" refer only to the right, privilege, etc., of the complainant or alleged recipient of the conduct of a sexual nature, or is it to be given a broader interpretation? A "person" is defined as an individual, corporation or association. TEX. PENAL CODE ANN. § 1.07(a)(38). May a recipient believe submission is implicitly conditioned on her or his father's or mother's or another person's exercise or enjoyment of that particular person's rights, privileges, powers, and immunities? Must the potential offender know in advance the full extent of any person's rights, privileges, powers, and immunities? These matters are extremely broad terms used in a variety of contexts and are sometimes overlapping in meaning. Does "any right" as used in the statute refer to rights which can be described as perfect or imperfect, in personam or in rem, primary or secondary, absolute or qualified, or legal or equitable? Does the term also refer to constitutional rights such as natural rights, civil rights, political rights, and personal rights? Even the term "personal rights" is a term of rather vague import. *See* BLACK'S LAW DICTIONARY 1325 (6th ed.1990). Furthermore, does the statute in question provide for a reasonable person standard?

Appellant calls attention to a number of cases where the particular statute involved was held unconstitutionally vague because of

the failure to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute. *See City of Akron v. Akron Center for Reprod. Health, Inc.,* 462 U.S. 416, 452, 103 S.Ct. 2481, 76 L.Ed.2d 687 (1983) ("the word 'humane' was impermissibly vague as a definition of conduct subject to criminal prosecution"); *Smith,* 415 U.S. at 573, 94 S.Ct. 1242 (finding vague a statute which made it illegal to treat a flag "contemptuously" because "what is contemptuous to one man may be a work of art to another"); *Coates v. City of Cincinnati,* 402 U.S. 611, 614, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971) (holding an ordinance vague because "conduct that annoys some people does not annoy others"); *May v. State,* 765 S.W.2d 438, 440 (Tex.Crim.App. 1989) (the inherent vagueness of telephone harassment statute, in attempting to define what annoys and alarms people and its failure to specify whose sensitivities are relevant, rendered statute unconstitutionally vague); *Cotton v. State,* 686 S.W.2d 140, 141 (Tex.Crim.App.1985) (Texas statute providing criminal penalties for sale of beer to a person "showing evidence of intoxication" was unconstitutionally vague); *Ex parte Chernosky,* 153 Tex.Crim. 52, 217 S.W.2d 673, 674 (1949) (holding words in reckless driving statute "without due caution or circumspection" were vague and indefinite rendering statute unconstitutional); *see also Long,* 931 S.W.2d at 289–90 (discussing constitutional problems with anti-stalking statute due to the failure to establish a "reasonable person" requirement).

Appellant further urges that section 39.03(c) is vague because it "encourages arbitrary and erratic arrests and convictions," citing *Papachristou v. City of Jacksonville,* 405 U.S. 156, 162, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972). A criminal statute must itself be precisely drawn so that it eliminates the risk of capricious application rather than foster it. *Cotton,* 686 S.W.2d at 143. Appellant contends that the term "sexual harassment" in the statute is so broadly defined that it permits "a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections." *Kolender v. Lawson,* 461 U.S. 352, 358, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983); *Adley,* 718 S.W.2d at 683

(striking down as vague gambling statute because "legislature has failed to sufficiently define the conduct of 'receiving a bet' so as to limit law enforcement and prosecutorial discretion in prosecuting only the professional, exploitive gambler"); *Baker v. State,* 478 S.W.2d 445, 448 (Tex.Crim.App.1972) (statute defining vagrant as being a person who "has no visible means of support" or who has "no property to support" him gives no standard to guide officers charged with enforcing statute, thus placing discretion in hands of police); *Meisner v. State,* 907 S.W.2d 664, 669 (Tex.App.—Waco 1995, no pet.) (traffic ordinance unconstitutionally vague, because, inter alia, the prosecutor "was able to construe the ordinance to fit the offense").

When attempting to discern the legislative intent in enacting a statute, a court must focus on the literal text, the plain meaning of the enactment. *Boykin v. State,* 818 S.W.2d 782, 785 (Tex.Crim.App.1991). If the plain language of the statute would lead to absurd results or the words are ambiguous, then the court may consider extratextual sources to aid the interpretation. *Id.* The State contends that in a void-for-vagueness examination, the court should look at the context and purpose of the statute, and that entire language of the enactment, not just isolated phrases, should be considered. We agree. Moreover, "a statute is not unconstitutionally vague merely because words or terms used are not specifically defined." *Engelking v. State,* 750 S.W.2d 213, 215 (Tex. Crim.App.1988); *Ex parte Anderson,* 902 S.W.2d at 699. Undefined words are ordinarily given their plain meaning unless the statute clearly shows that they were used in some other sense. *Anderson,* 902 S.W.2d at 699. Statutory words are to be read in context and construed according to the rules of grammar and common usage. TEX. GOV'T.CODE ANN. § 311.011(a) (Vernon 1988). A statutory provision need not be cast in terms that are mathematically precise; it need only give fair warning of the conduct proscribed and provide guidelines for law enforcement. *Grayned,* 408 U.S. at 110, 92 S.Ct. 2294; *State v. Garcia,* 823 S.W.2d 793, 798 (Tex.App.—San Antonio 1992, pet. ref'd).

Although not suggested by the State, we have examined the legislative history of H.B. 370 of the 71st Legislature in 1989 which resulted in the enactment of section 39.03(a)(3), (c).[10] Regrettably, neither the bill analysis nor the tapes of the House and Senate public hearings on the bill were helpful in divining the legislative intent. *See* H.B. 370, House Criminal Jurisprudence Subcommittee hearings May 11 and 17, 1989, Tapes, side one; H.B. 370, Senate Criminal Justice Committee, May 25, 1989, Tape, side one. It appears that the addition to the official oppression statute (which became section 39.02(a)(3), (c) in 1989) was proposed because in 1988 a municipal judge had purportedly offered to dismiss a woman's traffic tickets in return for sexual favors. The hearings indicated that an indictment against the judge was quashed,[11] and he was prosecuted for a minor offense. The proponents of the bill contended that there was a gap in the law, while opponents claimed that "sexual harassment" was difficult to define, and that H.B. 37 would create a poorly worded offense to be levied against public officials by disgruntled individuals.[12]

The State urges that a criminal statute can be sustained if a challenged term in the statute has a well-defined meaning in the civil jurisprudence of the state, citing *Luplow v. State*, 897 P.2d 463, 468 (Wyo.1995). The prosecutor advances the contention that the "context" of section 39.03(a)(3), (c) is an apparent derivation from sexual discrimination actions brought under Title VII of the Federal Civil Rights Act of 1964. The Texas Commission on Human Rights Act makes it unlawful for an employer to discriminate against an employee with respect to compensation or the terms, conditions, or privileges of employment because of race, color, disability, religion, sex, national origin, or age.

TEX. LAB.CODE ANN. § 21.051 (Vernon 1996). The Human Rights Act is modeled on federal law with the purpose of executing the objectives of Title VII of the Civil Rights Act of 1964, as amended, 42 USCA § 2000e, et seq. *See* TEX. LAB.CODE ANN. § 21.051, 1.02 (Vernon 1996); *Ewald v. Wornick Family Foods Corp.*, 878 S.W.2d 653, 658 (Tex.App.—Corpus Christi 1994, writ denied). The United States Supreme Court has interpreted the language of Title VII (42 USCA § 2000e–2(a)(1) 1997) [13] to include "sexual harassment" as a form of sexual discrimination in the field of employment practice. Sexual harassment is recognized as employment discrimination. *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 64, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986); *Ewald*, 878 S.W.2d at 658. Two separate civil causes of action have arisen under Title VII—quid pro quo harassment and harassment due to a hostile or abusive work environment. *Meritor*, 477 U.S. at 66, 106 S.Ct. 2399; *Syndex Corp. v. Dean*, 820 S.W.2d 869, 871 (Tex.App.—Austin 1991, writ denied).

Normally, an action for quid pro quo harassment arises when a subordinate employee is pressured to engage in some type of sexual activity with a supervisor as a condition of retaining employment or receiving consideration for a promotion. *See, e.g., Virgo v. Riviera Beach Assocs., Ltd.*, 30 F.3d 1350, 1362 (11th Cir.1994); *Karibian v. Columbia Univ.*, 14 F.3d 773, 778 (2nd Cir. 1994). The action is characterized by an exchange of sexual favors for some job-related benefit. *See Collins v. Baptist Mem'l Geriatric Ctr.*, 937 F.2d 190, 196 (5th Cir. 1991); *Ewald*, 878 S.W.2d at 658. And in a quid pro quo sexual harassment case, the court can reach its conclusion by the use of either the objective standard or the subjec-

**10.** See note 2.

**11.** The nature of the indictment and the basis of the quashed order were not revealed by the legislative tapes.

**12.** Neither the bill analysis nor the legislative tapes mentioned the Commission on Judicial Conduct. *See* TEX. GOV'T.CODE ANN. § 33.001, et seq. (Vernon 1988).

**13.** Section 2000e–2(a)(1) states in part:

*Employer practices*
It shall be unlawful employment practice for an employer-
1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, term, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin . . . .

tive standard. *Nichols v. Frank*, 42 F.3d 503, 511–12 (9th Cir.1994).

In hostile or abusive work environment sexual harassment, an exchange of favors may or may not occur. Here, the victim is subjected to abuse and hostility in the work environment itself. To determine if a work environment is abusive or hostile, courts look at all related circumstances to determine whether a reasonable person would perceive the environment as hostile or abusive. In reviewing the circumstances, courts also consider the victim's own subjective perception of the environment.

Regina L. Stone–Harris, *Same Sex Harassment—The Next Step In The Evolution of Sexual Harassment Law Under Title VII*, 28 St. Mary's Law Journal 269, 274–75 (1996).

The Equal Employment Opportunity Commission (EEOC) is charged with enforcing Title VII. Pursuant to that authority, the EEOC has adopted certain guidelines defining the scope of sexual harassment:

> Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute sexual harassment when (1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment, (2) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual, or (3) such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.

29 CFR § 1604.11(a) (1997).

The State takes the position that the Legislature in enacting section 39.03(a)(3), (c) criminalized the civil "quid pro quo" sexual harassment by a public servant and rejected the "hostile work environment" sexual harassment for inclusion in the statute. The State in its brief notes the elements of a civil quid pro quo claim,[14] but fails to show just how these elements have been criminalized in section 39.03(a)(3), (c) or what terms or words in the criminal statute have a well-defined meaning in the civil jurisprudence of the state that must be applied to the criminal statute.

It is clear that the criminal statute here in issue is far broader than Title VII or the EEOC guidelines. It is not limited by any means to the workplace, the employer-employee relationship, or equal opportunity for employment. Without a doubt, the definition of "sexual harassment" in section 39.03(c) was lifted in large part from the EEOC guidelines quoted above. *See* 29 CFR § 1604.11(a)(1). However, instead of the phrase "submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment," section 39.03(c) uses the language "submission to which is made a term or condition of a person's exercise or enjoyment of any right, privilege, power, or immunity, either explicitly by or implicitly." The term "any right, privilege, power, or immunity" is obviously borrowed from subsection (a)(2) of section 39.03 without the requirement that the public servant knows that "his conduct is unlawful." Subsection 39.03(c) is clearly a hybrid.

Whatever genes section 39.03(a)(3), (c) may have inherited from the federal and state civil law as attributed to it by the prosecution, the criminal statute is no clone. Furthermore, there is a greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe. *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982). A statute that imposes a criminal penalty is subject to a

---

**14.** The elements of a civil quid pro quo claim are: (1) the employee is a member of a protected class; (2) the employee is subject to unwelcome sexual advances or requests for sexual favors by one with apparent or actual authority over the employee; (3) the harassment complained of is based on sex; (4) the employee's submission to the unwelcome advances was an express or implied condition for receiving job benefits or that the employee's refusal to submit to a supervisor's sexual demands resulted in a tangible job detriment; and (5) the existence of respondeat superior liability. *See Jones v. Flagship Int'l*, 793 F.2d 714, 721–22 (5th Cir.1986); *Henson v. City of Dundee*, 682 F.2d 897, 909 (11th Cir.1982); *Soto v. El Paso Natural Gas*, 942 S.W.2d 671, 677–78 (Tex.App.—El Paso 1997, writ denied); *Ewald*, 878 S.W.2d at 658–59.

greater degree of scrutiny by a reviewing court. *Lear v. State,* 753 S.W.2d 737, 740 (Tex.App.—Austin 1988, no pet.). This is particularly true in addressing vagueness and overbreadth challenges. *City of Houston v. Hill,* 482 U.S. 451, 459, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987) (citing *Winters v. New York,* 333 U.S. 507, 515, 68 S.Ct. 665, 92 L.Ed. 840 (1948)); *Olvera,* 806 S.W.2d at 550.

■ As earlier noted, an enactment is void for vagueness under the Due Process Clause of the Fourteenth Amendment if it fails to draw reasonably clear lines between lawful and unlawful conduct. *Smith,* 415 U.S. at 574–78, 94 S.Ct. 1242; *Kramer,* 712 F.2d at 176. Many of the words used in section 39.03(c) are susceptible to uncertainties of meaning and are inherently vague. The vagueness of these terms have been questioned and discussed earlier. Moreover, the statute fails to specify whose sensitivities must be offended. *Coates,* 402 U.S. at 614, 91 S.Ct. 1686. "*Coates* recognized that a statute is unconstitutionally vague when the standard of conduct it specifies is dependent on each complainant's sensitivity." *Kramer,* 712 F.2d at 178. The potential offender is left to estimate the subjective sensitivity of the recipient on a case-by-case basis. An examination of section 39.03(a)(3), (c) also fails to reveal a reasonable person standard. We do not even find the words "reasonably likely" which were rejected as insufficient to establish a reasonable person standard in *Long,* 931 S.W.2d at 289. Our research of the legislative history of the statute is inconclusive as to any legislative intent to establish a reasonable person or objective standard. Had the Legislature intended a reasonable person standard, it could have easily specified one. *See Long,* 931 S.W.2d at 290. The absence of a reasonable person standard, however, is not necessarily fatal to a statute's constitutionality if other provisions of the statute sufficiently define the offense to avoid a vagueness problem. *Id.; see also Colten v. Kentucky,* 407 U.S. 104, 110, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972); *DeWillis v. State,* 951 S.W.2d 212, 216 (Tex.App.—Houston [14th Dist.] 1997, no pet.). Like

*Long,* we find no factors present to compensate for the lack of a reasonable person standard. *See Long,* 931 S.W.2d at 290–95. It would appear that section 39.03(a)(3) is unconstitutional because the conduct requirement of the law is vague and a reasonable person standard cannot be read into the law, unless there are other factors that may save it.

### INTENT

■ A requirement of scienter may mitigate a law's vagueness, especially with regard to the adequacy of notice to an individual that his conduct is proscribed. *See Hoffman Estates,* 455 U.S. at 499, 102 S.Ct. 1186; *Screws v. United States,* 325 U.S. 91, 101–02, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945); *Meisner,* 907 S.W.2d at 668; *Wisenbaker v. State,* 860 S.W.2d 681, 689 (Tex.App.—Austin 1993, pet. ref'd). Specifying an intent element, however, does not save a criminal statute from vagueness where the conduct which must be motivated by intent, as well as the standard by which that conduct is to be assessed, remain vague. *See Kramer,* 712 F.2d at 178.

■ Section 39.03(a)(3) specifies a mental state of "intentionally"[15] as opposed to mere knowledge or recklessness, but the mental state required does not solve the vagueness of the underlying conduct. Subsection (c) defining "sexual harassment" covers any conduct of a sexual nature in which a person could possibly engage. The limiting function, if any, of the phrase beginning "submission to which ..." is equally fuzzy and vague and is offset by the expansive coverage of all conduct of a sexual nature, be it verbal or physical. *See Long,* 931 S.W.2d at 289. Whatever an accused's intent may be, if he or she is unable to determine the underlying conduct proscribed by a statute, then the statute fails on vagueness grounds. *See Kramer,* 712 F.2d at 178. The intent requirement of section 39.03(a)(3), (c) does not save it from the vagueness challenges.

### NARROWING CONSTRUCTION

■ A statute should be voided for vagueness only if the statute, when narrowly

**15.** *See* Tex. Penal Code Ann. § 6.03 (Vernon 1994).

construed, still poses a serious possibility of confusion. Courts have a general duty to employ reasonable narrowing constructions to avoid constitutional violations. *Morehead,* 807 S.W.2d at 581; *Olvera,* 806 S.W.2d at 552. If the statute, however, is not readily subject to a narrowing construction, courts may not assume the legislative prerogative and rewrite a statute in order to save it. *Olvera,* 806 S.W.2d at 552. Considerable language cannot be added to the statute without the courts engaging in judicial legislation. Moreover, courts may not sever from the statute an element of the offense where such action would broaden the scope of the statute, prohibit new conduct, and violate legislative intent. *See Howard v. State,* 617 S.W.2d 191, 192 n. 1 (Tex.Crim.App.1979).

█ In *Long,* 931 S.W.2d at 295, the Court of Criminal Appeals held for the first time that a narrowing construction could be applied in the vagueness context as it had been applied in the overbreadth-First Amendment context in the past. At first blush, it would seem that a narrowing construction could be validly applied in the instant case by eliminating subsection (c) defining "sexual harassment" leaving subsection (a)(3) standing alone ("intentionally subjects another to sexual harassment"). This would require giving the term its plain and ordinary or common meaning. *Anderson,* 902 S.W.2d at 699.[16] To do so would significantly alter the meaning of the statute as drafted by the Legislature. The manner and means of committing the offense would be changed. A new offense would be created. This the courts are not allowed to do under the guise of narrowing the construction of a statute with a gloss of constitutionality validity.

Even if this was not true, leaving "sexual harassment" statutorily undefined runs the risk of leaving the reconstructed statute vague. In *Nichols,* the court stated:

> (b) *Definition.* The question of what constitutes sexual harassment is a complicated and increasingly important one in our society. There is no agreed upon definition of the newly popular term. In some versions, it appears to cover the widest possible range of sins, from physical assault to reading a magazine in a public facility. Whether particular conduct is appropriate or whether it crosses the line is the subject of disagreement and controversy, always heated and often legitimate. Public opinion can change rapidly. It is quite possible for conduct that is acceptable today to become unacceptable tomorrow. One's views are influenced by one's age, sex, national origin, religion, philosophy, education, and experience. There is no uniform attitude towards the role of sex nor any agreement on what is appropriate for inclusion in a code governing sexual conduct.

*Nichols,* 42 F.3d at 509–10.

We conclude that this court may not validly reconstruct 39.03(a)(3), (c) in order to hold it constitutional. Any changes are within the province of the Legislature.

█ Section 39.03(a)(3), (c) is unconstitutionally vague as a matter of due process on the basis of the twin dangers of a vague law—lack of notice and arbitrary and discriminatory application.[17] We uphold the due process challenge as the enactment is impermissibly vague in all of its applications,

---

16. The term "sexual harassment" is limited to or is described as a type of employment discrimination arising out of Title VII of the Civil Rights Act of 1964. BLACK's LAW DICTIONARY 1375 (6th ed.1990). The term is not ordinarily found defined as a term. "Sexual" means pertaining to or characteristic of sex, the sexes, or the organs or functions of sex. The READER's DIGEST GREAT ENCYCLOPEDIC DICTIONARY (1966); AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE at 1188 (1972). "Harass" means (1) to disturb or irritate persistently; (2) to wear out; exhaust. *See* AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE at 600 (1972). "Harass" has been described as a "course of conduct" which implies repetition or conduct of a continuing nature, directed at a

specific person that causes substantial emotional distress in such person and serves no legitimate purpose. *See Benton v. Comm'n of Lawyer Discipline,* 933 S.W.2d 784, 787 (Tex.App.—Corpus Christi, 1996), *reh'g overruled,* 941 S.W.2d 229 (Tex.App.—Corpus Christi, 1997, no writ). "Harass" is used as a variety of legal contexts to describe words, gestures, and actions which tend to annoy, alarm and abuse (verbally) another person. BLACK's LAW DICTIONARY 717 (6th ed.1990).

17. Each of the twin dangers of a vague law is an independent ground for finding a statute void for vagueness. *Adley,* 718 S.W.2d at 685.

including application to appellant.[18] The statutory language in section 39.03(a)(3), (c) offends the Due Process Clause in the absence of an ascertainable standard. *See Smith,* 415 U.S. at 578, 94 S.Ct. 1242. The deficiency is particularly objectionable in view of the unfettered latitude accorded law enforcement officials, prosecutors, and triers of fact to apply their own notions of sexual harassment. *Id.*

### ALTERNATIVE BASIS—FIRST AMENDMENT

■ As an alternative basis for our holding, we further find that section 39.03(a)(3), (c) is overbroad and violates the First Amendment to the United States Constitution, applicable to the states by virtue of the Fourteenth Amendment. *Olvera,* 806 S.W.2d at 548 n. 2. Appellant raised this issue in the court below and it is included and briefed in his argument to this court. The State contends the issue was not raised on appeal, but briefs the issue nonetheless. The "brief must state concisely all issues or points presented for review. The statement of an issue or point will be treated as covering every subsidiary question that is fairly included." TEX.R.APP. P. 38.1(e). Moreover, First Amendment considerations are intertwined with the vagueness issue. *See Long,* 931 S.W.2d at 288. In the area of First Amendment rights, stricter standards of permissible statutory vagueness apply to a statute. First amendment rights are not to be abridged or even chilled by statutory vagueness. 16A C.J.S. *Constitutional Law* § 459 at 483 (1984).

■ The State has, within its police power, the right to protect its legitimate interests. *See Blanco v. State,* 761 S.W.2d 38, 40 (Tex.App.—Houston [14th Dist.] 1988, no pet.) (citing *Kovacs v. Cooper,* 336 U.S. 77, 69 S.Ct. 448, 93 L.Ed. 513 (1949)). The right of the State is limited only by individual constitutional rights, such as First Amendment's

free speech. *Clark v. State,* 665 S.W.2d 476, 482 (Tex.Crim.App.1984). An attack on a statute as being overbroad is normally and traditionally reserved for complaints concerning alleged First Amendment violations. *Bynum,* 767 S.W.2d at 772.

■ Overbreadth is a term to describe a situation where a statute proscribes not only what may constitutionally be proscribed, but also forbids conduct which is protected, especially the First Amendment's safeguards of speech and press. The First Amendment literally forbids the abridgement only of "speech," but its protection does not end at the spoken or written word. Conduct may be sufficiently imbued with elements of communication to fall within the scope of the First and Fourteenth Amendments. *See Texas v. Johnson,* 491 U.S. 397, 404, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989); *see also* 16A C.J.S. *Constitutional Law,* § 459 at 484–85. Constitutional violations may also arise from the "chilling" effect of statutory provisions that fall short of direct prohibition against exercise of First Amendment rights. *See Penny Saver Publications, Inc. v. Village of Hazel Crest,* 905 F.2d 150, 154 (7th cir.1990).

■ An individual whose own activities may validly be prohibited is permitted nonetheless to challenge a statute as overbroad because it also threatens others not before the court. *Dubuisson v. State,* 572 S.W.2d 694, 696 (Tex.Crim.App.1978). "The overbreadth doctrine has often been understood as an exception to the rule that individuals generally may not litigate the rights of third parties." Lawrence Tribe, *American Constitutional Law* § 12–27 at 1023 (1988); *see also Brockett v. Spokane Arcades, Inc.,* 472 U.S. 491, 503, 105 S.Ct. 2794, 86 L.Ed.2d 394 (1985); *NAACP v. Button,* 371 U.S. 415, 432–33, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963). When this exception is applied, it may appear to be vindicating the rights of third parties, but in

18. *See Hoffman Estates,* 455 U.S. at 494–95, 102 S.Ct. 1186; *State v. Garcia,* 823 S.W.2d 793, 796–97 (Tex.App.—San Antonio 1992, pet. ref'd). Normally, where First Amendment rights are not involved, an accused must show, in his challenge to the statute on the basis of vagueness, that the statute is unconstitutional as applied to him in

his situation; that it may be unconstitutional to others is not sufficient. *Bynum,* 767 S.W.2d at 774. However, where the statute is impermissibly vague in all its applications, a different rule applies. *Briggs v. State,* 740 S.W.2d 803, 806 (Tex.Crim.App.1987); *Anderson,* 902 S.W.2d at 699.

fact is doing no more than judging the party before the court by a permissible standard (the right of a litigant to be judged in accordance with a constitutionally valid rule of law). *See* Tribe, § 12–27 at 1024.

 The elements of First Amendment overbreadth analysis are familiar. *Smith,* 415 U.S. at 572 n. 7, 94 S.Ct. at 1247 n. 7; *Grayned,* 408 U.S. at 108–09, 92 S.Ct. 2294; Tribe, § 12–27 at 10121. Only a statute that is substantially overbroad may be invalidated on its face. *City of Houston,* 482 U.S. at 458, 107 S.Ct. 2502; *New York v. Ferber,* 458 U.S. 747, 769, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982). Criminal statutes, however, that make unlawful a substantial amount of constitutionally protected conduct may be held facially invalid even if they have legitimate application. *Hill,* 482 U.S. at 459, 107 S.Ct. 2502; *Kolender,* 461 U.S. at 359 n. 8, 103 S.Ct. 1855 n. 8.

The instant statute deals with speech and expressive conduct. Section 39.03(a)(3), (c) by its literal language makes sexual harassment in part out of "unwelcome sexual advances, requests for sexual favors, and other verbal and physical conduct of a sexual nature." This all-encompassing phrase constitutes the alternative manner and means of committing the offense. The First Amendment forbids the states to punish the use of words or language not within narrowly limited classes of speech. *Gooding v. Wilson,* 405 U.S. 518, 521–22, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972). Even to such classes the statute must be carefully drawn or authorizedly construed to punish only unprotected speech. *Id.* "Speech is often provocative and challenging ... [But it] is nevertheless protected against censorship or punishment unless shown likely to produce a clear and present danger of a serious substantial evil that arises far above public inconvenience, annoyance, or unrest." *Terminiello v. Chicago,* 337 U.S. 1, 4, 69 S.Ct. 894, 93 L.Ed. 1131 (1949); *Morehead,* 807 S.W.2d at 580.

The instant statute is not narrowly tailored to prohibit only disorderly conduct, fighting words, obscene or opprobrious language, or unprotected speech. There is nothing to suggest that the nature of the statute with regard to protected speech or expressive activity is both inevitable and essential to maintain public order.

We conclude that section 39.03(a)(3), (c) is impermissibly overbroad because in addition to proscribing activity which may be validly forbidden constitutionally, it sweeps within its coverage a substantial amount of expressive activity which is protected by the free speech guarantee of the First Amendment. The protected activity is a significant part of the law's target. There exists no satisfactory way of severing the law's constitutional from its unconstitutional application so as to excise the latter from the law's reach. The State has an interest in the matter expressed by the nature of the statute but only by a constitutionally drafted statute.

Appellant's first two points of error are sustained. The judgment of conviction is reversed and appellant is ordered acquitted.