Arthur Garcia SANCHEZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–96–00140–CR.

Court of Appeals of Texas,
San Antonio.

Aug. 16, 2000.

Rehearing Overruled Oct. 20, 2000.

Mark Stevens, Stephanie L. Stevens, San Antonio, for Appellant.

Daniel Thornberry, Asst. Crim. Dist. Atty., San Antonio, for Appellee.

Sitting: PHIL HARDBERGER, Chief Justice CATHERINE STONE, Justice JOHN F. ONION, Jr.[1], Justice.

1. Assigned to this case by the Chief Justice of the Supreme Court of Texas.

## OPINION ON REMAND

Opinion by: JOHN F. ONION, Jr., Justice (Assigned).

This appeal was taken from a conviction for official oppression for sexual harassment. *See* Tex. Pen.Code Ann. § 39.03(a)(3), (c) (Vernon 1994).[2] The jury found appellant, Arthur Garcia Sanchez, guilty of the class A misdemeanor[3] and assessed his punishment at confinement in the county jail for one year and a fine of $3,000. The jury, however, recommended community supervision. The imposition of the sentence was suspended. Appellant was placed on community supervision for two years subject to certain conditions.

On original submission, this Court sustained appellant's contentions, finding that the sexual harassment provision of the statute was (1) unconstitutionally vague on its face and as applied in violation of the due process clause of the Fourteenth Amendment to the United States Constitution and (2) unconstitutionally over broad in violation of the First Amendment to the federal constitution. *See Sanchez v. State,* 974 S.W.2d 307 (Tex.App.-San Antonio 1998) (*Sanchez I*). The Court of Criminal Appeals on discretionary review found the sexual harassment statutory provision constitutional, reversed our judgment and remanded the cause for proceedings consistent with its opinion. *See Sanchez v. State,* 995 S.W.2d 677, 680 (Tex.Crim. App.), *cert. denied,* 528 U.S. 1021, 120 S.Ct. 531, 145 L.Ed.2d 411 (1999) (*Sanchez II*).

In construing Section 39.03(a)(3), (c) and finding it constitutional, the Court of Criminal Appeals discussed some of the essential elements of the offense, including some that were case-developed. The Court stated:

> We express no opinion concerning whether some or all of the allegations in the indictment contain all of the elements required by the sexual harassment provision *as we have construed it.* The Court of Appeals may address such issues on remand if those issues are found to be properly before the court.

*Sanchez II,* 995 S.W.2d at 689–90 n. 11 (emphasis added).

On remand, in light of the procedure normally utilized, the parties were granted leave by this Court to rebrief the case. *See Theus v. State,* 863 S.W.2d 489, 491 (Tex.Crim.App.1993).

## POINTS OF ERROR

In his brief following remand, appellant raises six points of error. First, appellant contends that the trial court erred in overruling his motion to set aside the amended indictment because, in violation of the federal and state constitutions, and state statutory provisions, the indictment did not, *inter alia,* charge an offense. Second, appellant urged the trial court erred in overruling the same motion because the indictment did not specify what "rights, privileges, powers, or immunities" were at issue in the case. Third and fourth, appellant challenges the factual sufficiency of the evidence to sustain the conviction. Fifth and sixth, appellant contends that

**2.** The indictment alleged the offense occurred between August 1, 1994 and February 15, 1995, Section 39.03 became effective September 1, 1994. Therefore, the former statute (§ 39.02) was also implicated. *See* Act of May 24, 1973, 63rd Leg., R.S., ch. 399, 1973 Tex. Gen. Laws 883, 953, *as amended by* Act of May 28, 1989, 71st Leg., R.S., ch. 1217, § 1, 1989 Tex. Gen. Laws 4934, 4935 (adding subsection 39.02(a)(3), (c)), *as amended by* Act of March 25, 1991, 72nd Leg., R.S., ch. 16, § 19.01(34), 1991 Tex. Gen. Laws 244, 369, *as amended by* Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 1.01, 1993 Tex. Gen.

Laws 3586, 3674 (current version of § 39.03(a)(3), (c), to which reference will be made throughout instant opinion).

**3.** The instant offense was charged by an indictment. Official oppression is within the ambit of official misconduct. *See Emerson v. State,* 727 S.W.2d 267, 268–69 (Tex.Crim.App. 1987). The offense charged is within the jurisdiction of the district court. *See* Tex. Const. art. V, § 8; Tex.Code Crim. Proc. Ann. art. 4.05 (Vernon Supp.2000).

the trial court erred in admitting into evidence summaries of telephone records in violation of Rules 901 and 1006 of the Texas Rules of Evidence.

Prior to addressing appellant's contentions, some background is necessary, including the statute, the indictment under which appellant was prosecuted, and the *Sanchez II* opinion. At this point in the appellate process, the instant case presents an out-of-the ordinary situation on remand. As recognized by the earlier quoted portion of the opinion in *Sanchez II*, there are some case-developed elements of the offense under section 39.03(a)(3), (c) as construed by the Court of Criminal Appeals that were not included in the indictment. Until the court spoke, the grand jury, the parties, and the trial court were not familiar with the construction to be placed on section 39.03(a)(3), (c).

### THE STATUTE

The official oppression statute criminalizes certain acts by a public servant acting under the color of his office or employment. *See* Tex. Pen.Code Ann. § 39.03 (Vernon 1994). This statute provides:

(a) *A public servant acting under color of his office or employment commits an offense if he:*

(1) intentionally subjects another to mistreatment or to arrest, detention, search, seizure, dispossession, assessment, or lien that he knows is unlawful;

(2) intentionally denies or impedes another in the exercise or enjoyment of any right, privilege, power, or immunity, knowing his conduct is unlawful; or

(3) *intentionally subjects another to sexual harassment.*

(b) For purposes of this section, a public servant acts under color of his office or employment if he acts or purports to act in an official capacity or takes advantage of such actual or purported capacity.

(c) *In this section, "sexual harassment" means unwelcome sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature, submission to which is made a term or condition of a person's exercise or enjoyment of any right, privilege, power, or immunity, either explicitly or implicitly.*

(d) An offense under this section is a Class A misdemeanor.

(emphasis added).

### INTERPRETATION OF SECTION 39.03(a)(3), (c)

*Sanchez II* interpreted the language of section 39.03(a)(3), (c), determined some of the elements of the offense, and held the statute constitutional. We deem it important to examine the holding in *Sanchez II*.

The Court of Criminal Appeals found that the text in section 39.03(c) (defining sexual harassment) could not be interpreted in accordance with the plain meaning of its language because it was ambiguous concerning which alternative was modified by the term "unwelcome". *See Sanchez II*, 995 S.W.2d at 683. The Court recognized two possible interpretations-that "unwelcome" modified only sexual advances or modified the entire statutory list including "requests for sexual favors" and "other verbal or physical conduct of a sexual nature." *Id.* at 683–84. The Court, disavowing language in *State v. Edmond*, 933 S.W.2d 120, 122, 127, 128 (Tex.Crim. App.1996), stated: "And while the grammatical construction for the latter interpretation is awkward, that construction is not definitely incorrect. As the sexual harassment definitions language is ambiguous, we resort to sources outside the language of the definition." *Sanchez II*, 995 S.W.2d at 684.

In doing so, the Court concluded that all alternative forms of sexual harassment un-

der section 39.03(a)(3), (c) must involve "unwelcome" conduct. *See id.* at 685.

Further, the Court found that:

the statute requires intent on the part of the perpetrator that the conduct be of a sexual nature, not merely that the recipient perceive the conduct as sexual. To intentionally subject someone to a sexual advance, for example, the actor must be *intending* a *sexual* advance. To use the Court of Appeals' examples, a wink or a smile would not fall within the statute unless the perpetrator *intended* the wink or smile *to be* a sexual advance (or a request for sexual favors, or other verbal or physical conduct of a sexual nature). Moreover, because the statute requires that the perpetrator intentionally subjects the victim to "unwelcome" sexual conduct, the perpetrator must necessarily be aware [know] that the sexual conduct is in fact unwelcome to be liable under the statute.

*Sanchez II*, 995 S.W.2d at 685.[4]

The Court of Criminal Appeals further stated:

The statute requires that the perpetrator not only intentionally subject a victim to the specified unwelcome sexual conduct ... the perpetrator must also intend that submission to the conduct be made a term or condition of a person's exercise of any right, privilege, power or

immunity. In other words, the culpable mental state applies to both (a) the sexual conduct and (2) the *quid pro quo*. *Id.* at 686.

### RIGHT, PRIVILEGE, POWER, OR IMMUNITY

For the purpose of the *Sanchez II* opinion, the Court of Criminal Appeals assumed but did not decide that the statutory phrase "right, privilege, power, or immunity" was so broad "that it covers anything of value to a person." *Id.* at 686.[5] Moreover, the Court recognized that the statute does not limit the *quid pro quo* to the *recipient's* exercise or enjoyment of rights, privileges, powers, or immunities but a defendant could make "sexual advances upon the recipient submission to which could be a term or condition of a *third party's* exercise or enjoyment of a right, privilege, power, or immunity." *Id.*

And important to our discussion, the *Sanchez II* opinion later added: "As for the phrase 'right, privilege, power, and immunity,' we need not decide whether that phrase may in some instance deprive a person of fair notice of the conduct proscribed." *Id.* at 689.

### SOME ELEMENTS

The *Sanchez II* opinion sought to make clear some of the essential elements of the

---

**4.** The Court further explained in footnote 7: Given the structure of the statute and its apparent purposes, we find that the statute does not require the perpetrator to intend that the conduct be unwelcome. He may in fact wish that the conduct were welcomed by the recipient, but he intentionally subjects the recipient to unwelcome sexual conduct when he intends sexual conduct that he knows is unwelcome. This is so because the sexual nature of the conduct flows from the actor, but the unwelcome nature of the conduct flows from the recipient. Despite the fact that unwelcome describes a recipient's state of mind, that statute uses "unwelcome" as an adjective to describe the nature of the conduct. Hence, the perpetrator intends conduct which is unwelcome, but he does not necessarily intend the conduct to be unwelcome.

*Sanchez II*, 995 S.W.2d at 685 n. 7.

**5.** "Value" is not defined for the purpose of the statute or the Penal Code. "Value" has many definitions used in various legal proceedings. *See* Black's Law Dictionary 1551 (6th ed.1990). In its ordinary use "value" has been defined as (1) an amount considered to be a suitable equivalent for something else; a fair price or return for goods or services; (2) monetary or material worth; (3) worth in usefulness or importance to possessor; utility or merit. *See* American Heritage Dictionary of the English Language 1415 (1973). If possible, the Court of Criminal Appeals appears to have broadened the already broad statutory phrase "rights, privileges, powers, or immunities."

offense under section 39.03(a)(3), (c) when it stated:

> Whatever the scope of "rights, privileges, powers, and immunities," the sexual harassment provision of the official oppression statute proscribes conduct that, at least, contains the following elements:
>
> (1) an official's use of his official position,
>
> (2) to intentionally engage in conduct of a sexual nature or attempt to procure sexual favors,
>
> (3) which he knows is not welcomed by the recipient,
>
> (4) intending submission to which to be a term or condition of the recipient's or another person's enjoyment of something of value to that person.

*Id.* at 687.

In concluding that the First Amendment was not implicated in the activity proscribed by the statute, the Court wrote:

> Sexual harassment under the statute is essentially sexual extortion: an official used his official position to coerce submission to conduct of a sexual nature. And the statute criminalizes sexual harassment that is *intentional.* *To be liable*, the official must intend the sexual nature of his conduct, he must be aware that the conduct is unwelcome, and he must intend submission to the conduct to be made a term or condition of enjoying something of value to the recipient or another person-something of value *that the official is in a position to withhold or provide.* In other words, the official must intend to carry out sexual extortion.

*Id.,* at 688 (emphasis added).

## THE AMENDED INDICTMENT

With the Court of Criminals Appeals' interpretation of section 39.03(a)(3), (c) as background, we return to the record.

Appellant's original motion to quash or set aside the indictment was granted in part and denied in part. The State was given ten days to amend the indictment. The indictment, as amended, alleged in pertinent part, that on or about the:

> 1ST day of AUGUST, A.D., 1994, through on or about the 15TH day of FEBRUARY, A.D., 1995, ARTURO SANCHEZ, while acting under color of his office as a public servant, to wit: an officer, employee and agent of government, namely: Chairman and Board Member of the Board of Trustees of VIA METROPOLITAN TRANSIT, did intentionally subject DIANE GONZALEZ to sexual harassment, namely: unwelcome sexual advances, requests for sexual favors, and other verbal and physical conduct of a sexual nature, by stating to DIANE GONZALEZ (hereinafter referred to as "COMPLAINANT") to the effect: that if COMPLAINANT did not have a sexual affair with him he would fire her; that to get an office, a secretary and a raise COMPLAINANT must have a sexual affair with him; that he had a sexual affair with another VIA employee and he would have a sexual affair with COMPLAINANT also; that he would have a sexual affair with COMPLAINANT; that COMPLAINANT should have a sexual affair with him because people already thought they were having a sexual affair; that COMPLAINANT must put on lipstick; that he would like COMPLAINANT to wear low-cut dresses; that he would like COMPLAINANT to wear black pantyhose and silk blouses because she looked better in them; that upon seeing a bruise on COMPLAINANT'S leg, that he asked COMPLAINANT if she was bruised from rough sex with her husband, and that he liked rough sex; and by touching DIANE GONZALEZ with his hand on her face, submission to which was explicitly and implicitly made a term and condition of DIANE GONZALEZ' exercise and enjoyment of her rights, privileges, powers and immuni-

ties....[6]

As can be seen, the amended indictment is a one paragraph, one-count charging instrument which alleged in pre-interpretation statutory language (later found to be ambiguous) all three statutory alternatives found in section 39.03(c) including the broadly-based third option "and other verbal and physical conduct of a sexual nature." The amended indictment then listed eight verbal statements and one act of physical conduct (touching complainant "with his hand on her face") without designating whether these alleged matters fell under one statutory alternative rather than another. The indictment does not appear to allege harassment as a course of conduct, which implied repetition or conduct of a continuing nature. The nine allegations were each separated by a semicolon attempting to allege the matters in the conjunctive. The State's theory was that each matter alone authorized a conviction for sexual harassment upon a finding of that particular matter by the jury. Each of these matters were submitted to the jury in the disjunctive supporting the State's theory.

At the conclusion, the indictment generally alleged that submission to these nine matters was made, explicitly and implicitly, a term and condition of Diane Gonzalez's exercise and enjoyment of "her rights, privileges, powers, or immunities." Although nine separate offenses were alleged, the indictment made no effort to specify which right, privilege, etc., was attributable to each offense alleged. There was no allegation appellant was in position to withhold or provide any right, privilege, power or immunity.

The acts were alleged to have occurred during a six and one-half month period "on or about August 1, 1994", "through on or about" February 15, 1995.[7] It is not possible to tell in exactly what order the nine alleged offenses occurred.

## THE INITIAL CONTENTION

In his first point of error on remand, appellant urges that the trial court erred in overruling his motion to set aside the amended indictment because, *inter alia*, it alleged conduct that was not criminal, it did not allege an act or omission which by law was declared to be an offense, and did not allege everything that needs to be proved. In effect, appellant complains that he was not informed of the nature and cause of the accusation against him in violation of federal and state constitutional provisions which he cited in his motion.

■ In his second point of error, appellant contends that the trial court overruled the same motion because the amended indictment did not specify what "rights, privileges, powers, or immunities" were at issue. This was an unanswered point of error on original submission. We shall consider both points of error together.[8]

6. See the amended indictment set forth in *Sanchez I*, 974 S.W.2d at 311. The initials on the amended indictment appear to be those of Jim Kopp, one of the prosecutors.

7. This allowed the State prove a date or dates other than those alleged in the indictment as long as the date is prior to the presentation of the indictment and within the statutory limitation period. *See Sledge v. State*, 953 S.W.2d 253, 256 (Tex.Crim.App.1997); *Howk v. State*, 969 S.W.2d 46, 49 (Tex.App.-Beaumont 1998, no pet.).

8. The State takes the position that the first point of error is not properly before this Court on remand because it was not a point of error on original submission. *See Rochelle v. State*, 791 S.W.2d 121, 124 (Tex.Crim.App. 1990); *Ontiveros v. State*, 890 S.W.2d 919, 931 (Tex.App.-El Paso 1994, no pet.). These cases hold that on direct appeal a point of error raised only by supplemental brief is not properly presented for review except with leave of court "as justice requires" or "in the interest of justice." *Rochelle*, 791 S.W.2d at 124.

Normally, on remand by the Court of Criminal Appeals "the jurisdiction originally granted to the [Court of Appeals] by constitutional and statutory mandate is fully restored...." *Adkins v. State*, 764 S.W.2d 782, 784 (Tex. Crim.App.1988); *see also Garrett v. State*, 749 S.W.2d 784, 786–87 (Tex.Crim.App.1986); *Calhoun v. State*, 951 S.W.2d 803, 806 (Tex. App.-Waco 1997, pet. ref'd.).

The Sixth Amendment to the United States Constitution provides in part that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be informed of the nature and cause of the accusation...." This right is made applicable to state prosecutions by the due process clause of the Fourteenth Amendment to the federal constitution. *See Pointer v. State*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). Article I, section 10 of the Texas Constitution provides in part that, "[i]n all criminal prosecutions the accused ... shall have the right to demand the nature and cause of the accusation against him and to have a copy thereof." Tex. Const., art. I, § 10. These constitutional guarantees require that notice be given with sufficient clarity and detail to enable the defendant to anticipate the State's evidence and prepare a proper defense to it. *See Garcia v. State*, 981 S.W.2d 683, 685 (Tex.Crim.App.–1998). Under article I, section 10, the requisite notice must come from the face of the charging instrument. *See Eastep v. State*, 941 S.W.2d 130, 132 (Tex.Crim.App.1997).

An indictment "is the written statement of a grand jury accusing a person therein named of some *act or omission* which, by law, is declared to be an offense." Tex. Code Crim. Proc. Ann. art. 21.01 (Vernon 1989) (emphasis added). Among the requisites of an indictment is the requirement that the "offense must be set forth in plain and intelligible words." Tex.Code Crim. Proc. Ann. art. 21.02(7) (Vernon 1989); *see also id.* art. 21.11. "The certainty required in an indictment is such as will enable the accused to plead the judgment that may be given upon it in bar of any prosecution for the same offense." *Id.* art. 21.04. Moreover, "[e]verything should be stated in an indictment which is necessary to prove." *Id.* art. 21.03.

In light of the constitutional guarantees and statutory provisions, an indictment must allege, in plain and intelligible language, all the facts and circumstances necessary to establish all the material elements of the offense charged. *See Garcia*, 981 S.W.2d at 685; *Bynum v. State*, 767 S.W.2d 769, 779 (Tex.Crim.App. 1989). The pleading must state facts which if true show a violation of the law. *See Posey v. State*, 545 S.W.2d 162, 163 (Tex.Crim.App.1977).

The rules of appellate procedure do not specifically address procedure in the courts of appeals after remand by the Court of Criminal Appeals. *See Theus v. State*, 863 S.W.2d 489, 491 (Tex.Crim.App.1993). The *Theus* court opined that because an appellant, following remand, stands in the same position as he did when the initial appeal was filed, the appellate rules apply as though the appeal was on original submission. *See id.* Thus, on remand the court of appeals is required to afford an appellant an opportunity to file a brief and to inquire as to the reason a brief was not filed on remand of the case. *See id.; see also* Tex.R.App. P. 38.8 (formerly Rule 74(*l*)(2)); *Reich–Bacot v. State*, 952 S.W.2d 542, 543 (Tex.Crim.App.1997). Failure of the court of appeals to do so may deprive an appellant of his right to rebrief and present argument on appeal in violation of the rule. *See Oliver v. State*, 891 S.W.2d 651, 652 (Tex.Crim.App. 1995).

Some decisions have limited rebriefing on remand to situations where the point of error or issue was not previously briefed on original submission. *See Reich–Bacot v. State*, 957 S.W.2d 892, 893 n. 6 (Tex.App.-Texarkana 1997, pet. dism'd) (citing *Bell v. State*, 956 S.W.2d 560 (Tex.Crim.App.1997)). Other cases make clear that issues may be briefed for the first time on remand where there has been a change in the law since original submission. *See Johnson v. State*, 864 S.W.2d 708, 716 (Tex.App.-Dallas 1993), *aff'd*, 912 S.W.2d 227 (Tex.Crim.App.1995); *see also State v. Hensley*, 866 S.W.2d 28, 29 (Tex.Crim. App.1993).

"A brief may be amended or supplemented whenever justice requires, on whatever reasonable terms the court may prescribe." Tex. R.App. P. 38.7 (formerly Rule 74(*o*)). Appellate rules apply on remand. *See Theus*, 863 S.W.2d at 491.

In light of *Theus*, the normal practice following remand, and the interpretation of section 39.03(a)(3), (c) in *Sanchez II*, this court has granted leave and given the parties an opportunity to rebrief the instant case on remand. We reject the State's contention that the first point of error is not before this Court for review on remand.

As a general rule, any element of the offense that must be proved should be stated in an indictment. *See Dinkins v. State*, 894 S.W.2d 330, 338 (Tex.Crim.App. 1995); *Whitehead v. State*, 745 S.W.2d 374, 376 (Tex.Crim.App.1988); 41 George E. Dix & Robert O. Dawson, Criminal Practice and Procedure, § 20.52, at 146 (Texas Practice 1995) (hereinafter Dix). Naturally, this includes a culpable mental state or states of the offense. *See Thompson v. State*, 697 S.W.2d 413, 415 (Tex.Crim.App. 1985). If an indictment fails to allege a culpable mental state for an offense, it is defective and subject to a motion to quash. *See Swope v. State*, 805 S.W.2d 442, 444 (Tex.Crim.App.1991). This applies even if the element of the offense is one developed by case law and not specifically set out in the statute defining the offense. *See Green v. State*, 951 S.W.2d 3, 4 (Tex.Crim. App.1997); Dix, § 20.52, at 20 n.2.1 (Supp. 1999).

"Whether an element of the offense may be inferred from the language employed is not the question. In face of a proper motion to quash, the information [or indictment] must state the elements of the offense, leaving nothing to inference or intendment. *See, e.g., Chance v. State*, 563 S.W.2d 812, 814–15 (Tex.Crim.App.1978)." *Green*, 951 S.W.2d at 4. The failure to allege an element of the offense in the indictment is a defect of substance. *See* Tex.Code Crim. Proc. Ann. art. 27.08(1) (Vernon 1989); *Tobias v. State*, 884 S.W.2d 571, 578 (Tex.App.-Fort Worth 1994, pet. ref'd.) (citing *Studer v. State*, 799 S.W.2d 263, 268 (Tex.Crim.App.1990)).

In regard to charging instruments, fundamental protections of adequate notice and due process require careful examination and consideration from the perspective of the accused. *See McManus v. State*, 591 S.W.2d 505, 515 (Tex.Crim.App. 1979). It is not sufficient to say that a defendant knew with what offense he was charged. The inquiry must be whether the charging instrument in writing furnished that information in plain and intelligible language. *See Beck v. State*, 682 S.W.2d 550, 554 (Tex.Crim.App.1985). The nature of the accusation against the defendant must come from the face of the charging instrument. *See State v. Draper*, 940 S.W.2d 824, 826 (Tex.App.-Austin 1997, no pet.) (citing Tex.Code Crim. Proc. Ann. arts. 21.02(7), 21.11 (Vernon 1989)).

An indictment must be fairly tested by itself as a pleading; it can neither be supported nor defeated as such by what evidence is introduced at trial. *See State v. Rosenbaum*, 910 S.W.2d 934, 941 (Tex. Crim.App.1994).

To avoid any confusion, it must be remembered that a defect of form or substance is waived if no motion, objection, etc., is made before the date trial commences. *See* Tex.Code Crim. Proc. Ann. art. 1.14(h) (Vernon Supp.2000); *State v. Murk*, 815 S.W.2d 556, 557 (Tex.Crim.App. 1991); *see also Duron v. State*, 956 S.W.2d 547 (Tex.Crim.App.1997). In the instant case there was such a motion.

## STATE'S ARGUMENT

The State urges that appellant's first point of error presents no error even if it is properly before the court. It contends that the trial court did not err in overruling the motion to set aside the amended indictment because the motion did not specify how the charging instrument was deficient and inform the trial court of the specific complaint. *See Jones v. State*, 672 S.W.2d 798, 799–800 (Tex.Crim.App.1984); *see also Whalon v. State*, 725 S.W.2d 181, 191 (Tex.Crim.App.1986).

We do not agree. The motion might not win any legal Good Housekeeping Seal of Approval but it pointed out to the trial court the difficulty appellant had with notice given by the amended document and in preparing a defense, etc. In light of a motion to set aside the indictment, the indictment should be examined in light of the presumption of innocence. *See Coleman v. State*, 643 S.W.2d 124, 125 (Tex.Crim.App.1982). Under Article I,

Section 10 of the Texas Constitution, a defendant has a right to have a grand jury pass upon the question of whether there is probable cause to believe that he committed a particular offense. *See Duron v. State,* 956 S.W.2d 547, 550 (Tex.Crim.App. 1997). And under the same constitutional provision, he is entitled to demand the nature and cause of the accusation against him. It is not realistic, at least in the context of this case, for a presumptively innocent defendant to be required to specify in detail by written motion missing elements or what should have been pleaded by the State in the indictment returned by the grand jury. The trial court, of course, should not be "sandbagged" by a defendant or by the State. *Cf. Seefurth v. State,* 422 S.W.2d 931, 936 (Tex.Crim.App.1967). In the instant case, the motion in question was the second motion to quash the indictment filed and heard. Appellant was clearly seeking to ascertain the nature and the cause of the accusations against him and it is apparent from the context that the trial court and the prosecutor knew or should have known the basis of appellant's motion. *See* Tex.R.App. P. 33.1(a)(1)(A); *Zillender v. State,* 557 S.W.2d 515, 517 (Tex.Crim.App.1977). Moreover, no waiver can be inferred or appellant faulted for failure to point out in his motion to quash the omission in the indictment of elements later developed by case law when the claim would have been novel and the claim would have been futile. *Cf. Ex parte Chambers,* 688 S.W.2d 483, 486 (Tex.Crim.App.1984) (Campbell, J., concurring). We reject the State's contention.

█ The amended indictment did not allege the essential culpable mental state of "knowing"[9] under section 39.03(a)(3), (c). There was no allegation, as required by *Sanchez II,* 995 S.W.2d at 687, that appellant knew any conduct of a sexual nature [in which he intentionally engaged] was not welcomed by the recipient [complainant]. It is fundamental that an indictment must allege all essential elements of the

offense to be charged. *See Ex parte Winton,* 549 S.W.2d 751, 752 (Tex.Crim.App. 1977). As noted, this rule applies even if the element is one developed by case law and not specifically set out in the statute defining the crime. *See Green,* 951 S.W.2d at 4. An allegation of an essential culpable mental state is an element of the offense, *Winton,* 549 S.W.2d at 752, and its absence, like that of other essential elements, is a defect of substance. *See Studer v. State,* 799 S.W.2d at 267–68; *McCoy v. State,* 932 S.W.2d 720, 724 (Tex.App.-Fort Worth 1996, pet. ref'd). Whether an element of an offense may be inferred from the language employed is not the question. In the face of a motion to quash, the indictment must state the elements of the offense, leaving nothing to inference or intendment. *Green,* 951 S.W.2d at 4; *Chance v. State,* 563 S.W.2d 812, 814–15 (Tex.Crim.App.1978).

*Jackson v. State* involved a charging instrument in an evading an arrest prosecution. [718 S.W.2d 724 (Tex.Crim.App. 1986) ] *Jackson* held that in such prosecution it is an essential element that the accused know that the peace officer is attempting to arrest him or her, in addition to knowing that the person is a peace officer. *See id.* at 725. When such essential element is omitted from the charging instrument, the offense of evading arrest is not properly plead. *See id.* In concurring, Judge Clinton pointed out that the culpable mental state of "intentionally" does not embrace "with knowledge" that the peace officer was attempting to arrest the accused. *Jackson,* 718 S.W.2d at 727 (Clinton, J., concurring). "Here the latter fact is one of the 'circumstances surrounding the conduct'—existence of which an accused must be aware. V.T.C.A. Penal Code § 6.02(b). One can not 'intend' circumstances surrounding his conduct. *Lugo–Lugo v. State,* 650 S.W.2d 72, 87 (Tex.Crim.App.1983) (concurring opinion)." *Id.* (Clinton, J., concurring).

**9.** *See* Tex. Pen.Code Ann. § 6.03(h) (Vernon      1994).

The failure to allege the culpable mental state of "knowing" was a defect of substance in the instant indictment. Its absence, standing alone, is sufficient basis for finding that the trial court erred in overruling the second motion to set aside the indictment.

Although the instant indictment alleged in general that appellant "did intentionally subject Diane Gonzalez to sexual harassment," there was no further allegation in the nine separate offenses set forth that appellant "intended to engage in conduct of a sexual nature" or "intended" submission thereto to be a condition or term of the complainant's enjoyment or exercise of a right, privilege, power, or immunity—the quid pro quo. These were culpable mental states—latent in the statute but expressly declared are developed by the Court of Criminal Appeals in finding the statute constitutional. *See Sanchez II,* 995 S.W.2d at 686.

■ Even if an indictment contains language describing the correct culpable mental state, such language must modify and refer to each and every element of the offense requiring such a mental state to avoid a defect in the indictment which would be subject to a motion to quash. *See Diggles v. State,* 641 S.W.2d 667, 669 (Tex.App.-Dallas 1982, pet. ref'd.). *Sanchez II* made clear that not just any conduct will do, it must be conduct of a sexual nature to trigger the provisions of section 39.03(a)(3), (c). As the court noted, a wink or a smile would not fall within the statute *unless* the perpetrator intended a wink or a smile to be an unwelcome sexual advance, unwelcome request for sexual favors or other unwelcome physical and verbal conduct of a sexual nature. *Sanchez II,* 995 S.W.2d at 685. Like the wink, many of the verbal statements and the one physical act alleged would not fall within the statute unless appellant intended such conduct to be conduct of a sexual nature and further intended at the time of the conduct to impose the quid pro quo—submission thereto to be a condition or term

of the recipient's or another person's enjoyment or exercise of a right, privilege, power, or immunity. "In other words, the official must intend to carry out sexual extortion." *Sanchez,* 995 S.W.2d at 688. These culpable mental states of "intent" are elements of the offenses charged and their absence from the indictment are defects of substance.

## APPELLANT'S SECOND CONTENTION

■ The indictment attempted to allege nine separate offenses concluding "submission to which was explicitly and implicitly made a term and condition of Diane Gonzalez's exercise and enjoyment of her rights, privileges, powers, and immunities" without specifying which rights, privileges, etc., were involved. The Court of Criminal Appeals concluded that the statutory phrase "right, privilege, power, or immunity" was so broad as to cover "anything of value to a person." *Sanchez II,* 995 S.W.2d at 686. Later, the court declined to decide whether the phrase may in some instance deprive a person of fair notice of the conduct proscribed. *See id.* at 689.

■ In both his first and second motions to quash the indictment, Appellant expressly complained of the failure of the indictment to specify which rights, privileges, powers, or immunities were involved. Both motions were denied on this basis. The State acknowledges the omission of any specificity following the general allegation of the statutory phrase in the indictment. It points out, however, that earlier in the indictment, although not alleged as a right, privilege, power, or immunity, two of the nine separate theories alleged appellant stated (1) that he would fire the complainant if she did not have a sexual affair with him, and (2) that to get an office, a secretary, and a raise, she would have to have a sexual affair with him. The State argues that these allegations permeate the entire indictment regardless of the omission. We do not

agree. The allegations were limited to two of the nine offenses alleged to have occurred sometime between August 1, 1994, through February 15, 1995. Moreover, the fair notice required was not provided because there was no allegation at all that appellant was in a position to either provide or withhold any right, privilege, power, or immunity to the complainant. To be liable under the statute, appellant must have been in such a position. *See Sanchez II*, 995 S.W.2d at 688.

The trial court erred in overruling the motion to set aside the indictment as complained of in the first and second points of error. We must now determine if the error was harmless.

## HARMLESS ERROR ANALYSIS

▇▇▇▇ An exception to the form of an indictment exists if the indictment fails to provide adequate facts to give the defendant notice of the offense with which he is charged. *See Olurebi v. State*, 870 S.W.2d 58, 61 (Tex.Crim.App.1994); *Adams v. State*, 707 S.W.2d 900, 901 (Tex.Crim.App. 1986); *see also* Tex.Code Crim. Proc. Ann. arts. 21.02(7), 27.09(2) (Vernon 1989). Under Article 21.19 of the Texas Code of Criminal Procedure, a conviction may be affirmed despite a showing that the trial court erred in overruling a challenge to the charging instrument based on a defect of form in that instrument. *See Adams*, 707 S.W.2d at 901–904. "Affirmance is permissible-and mandated -if the defect did not prejudice the substantial rights of the defendant." Dix § 21.117, at 393.

> The first step ... is to decide whether the charging instrument failed to convey some requisite item of "notice." If the sufficient notice is given, this ends our inquiry. If not, the next step is to decide whether in the context of the case, this had an impact on the defendant's ability to prepare a

defense, and, finally, how great an impact.

*Adams*, 707 S.W.2d at 903.

▇▇▇ The *Adams* rule, however, does not apply if the defect in the indictment or information is one of substance. *See Jackson v. State*, 718 S.W.2d 724, 725 n. 1 (Tex.Crim.App.1986). A defect of substance in an indictment is not subject to article 21.19. Dix, § 21.117, at 394. When there is a defect in substance, there is a failure to charge a purported offense. *See Jackson*, 718 S.W.2d at 725 n. 1. Under such circumstances, *Jackson*, like the pre-*Adams* law,[10] assumed that no harmless error rule applied. "Reversal was automatic." Dix, § 21.117, at 394.

The exact relationship between the harmless error rule of *Adams* (to be imposed under article 21.19) and the harmless error rule of the Rules of Appellate Procedure is not altogether clear. *See* Dix, § 21.121 at 404. The *Adams* rule can be said to be statutory in nature as it is based on Article 21.19 and is not affected by the later adopted Rules of Appellate Procedure. Some appellate courts have combined *Adams* and former Rule 81(b)(2) (now Rule 44.2(a)-(b)) concluding beyond a reasonable doubt that a defect *in form* in the charging instrument made no contribution to the conviction. *See Robinson v. State*, 764 S.W.2d 367, 373 (Tex.App.-Dallas 1989, pet. ref'd.); *see also Sullivan v. State*, 831 S.W.2d 533, 534 (Tex.App.-Houston [14th Dist.] 1992, pet. ref'd.).

In *Burleson v. State*, 935 S.W.2d 526, 528–29 (Tex.App.-Waco 1996, no pet.), the conviction for possession of a firearm by a felon was reversed where the trial court erred in overruling the motion to quash the indictment that failed to allege an element of the offense—a defect of substance. There was no discussion or even mention of the applicability of any harm analysis. *Burleson* assumed like *Jackson* that no harmless error rule applied to the situation

---

**10.** *See, e.g., Few v. State*, 588 S.W.2d 578, 585 (Tex.Crim.App.1979); *Ward v. State*, 520

S.W.2d 395, 397–98 (Tex.Crim.App.1975).

involved. *Cf. Vela v. State,* 776 S.W.2d 721, 724 (Tex.App.-Corpus Christi 1989, no pet.) (*Adams* harm analysis applied to indictment challenged for failure to allege one element of offense, a defect of substance although characterized as notice defects.).

Rule 44.2 has replaced former Rule 81(b)(2) and has been divided into parts (a) for constitutional error and (b) for other errors with different standards of review.[11] Cain v. State has strictly limited immunity from the harmless error rule. *See* 947 S.W.2d 262, 264 (Tex.Crim.App.1997).

■■■ The timely objected-to indictment contained defects of substance. It lacked essential elements of the offense. Moreover, it failed to allege facts to give appellant the required notice of the offense with which he was charged. The trial court erred in overruling the challenge to the indictment. If the error here is subject to harm analysis at all, it matters not what harmless error rule is applied. *See Jackson,* 718 S.W.2d at 725 n. 1. Under any standard of review applied, the error would be harmful.

■■■ It is clear from the record that the omitted elements and the lack of required notice impacted appellant's defense. Moreover, the jury panel was voir dired on the conduct alleged in the indictment, not on all the elements of the offense. Even if an indictment fails to allege all the essential elements of the offense, the State is not excused from proving all the elements of the offense. *See State v. Turner,* 898 S.W.2d 303, 307–08 (Tex.Crim.App.1995). The flawed indictment in effect tended to lessen the State's burden of proof. The obligation of the trial court to charge the jury on the "law applicable to the case" requires that the jury be instructed concerning every element of the offense. *See* Tex.Code Crim. Proc. Ann. art. 36.14 (Vernon Supp.2000); 42 Dix, § 36.11. In the instant case, the trial court, following normal practice, charged the jury by tracking the indictment. This time, however, a flawed indictment was tracked. This authorized the jury to convict appellant on any of the nine separate theories contained in the one-count indictment without a finding of all the essential elements required of any of the nine separate allegations of the offense.[12] A jury charge may not authorize a conviction on less evidence than the law requires. *See Polk v. State,* 749 S.W.2d 813, 815–16 (Tex.Crim.App.1988); Dix, § 31.127 at 240.[13] The instant jury charge was a product of the flawed indictment. We conclude the error was harmful under any harmless error analysis. Appellant's first and second points of error are sustained.

**BEYOND HARMLESS ERROR**

■■■ Independent of any harmless error analysis, we are confronted with a

11. Rule 44.2(a)-(b) provides:

(a) *Constitutional Error.* If the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment.

(b) *Other Errors.* Any other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded.
Tex.R.App. P. 44.2(a)-(b).

12. The State argues that where different theories of the offense are submitted to the jury in the disjunctive, a general verdict is sufficient if the evidence supports one of the theories.

*See Fuller v. State,* 827 S.W.2d 919, 931 (Tex. Crim.App.1992); *Kitchens v. State,* 823 S.W.2d 256, 257–58 (Tex.Crim.App.1991). This is true, but in the instant case the jury was not required by the trial court's charge to find under any of the nine separate theories all the required elements of the offense, including the culpable mental state of "knowing."

13. *Cf. Curry v. State,* 975 S.W.2d 629, 630 (Tex.Crim.App.1998); *Malik v. State,* 953 S.W.2d 234, 240 (Tex.Crim.App.1997) (holding that in the context of an insufficiency of the evidence to support a conviction claim, the evidence is no longer measured by the jury charge actually given but rather measured by the elements of the offense by a hypothetically correct jury charge).

situation where the conviction cannot stand. The indictment did not charge appellant with all the elements of the offense under section 39.03(a)(3), (c) as construed by the Court of Criminal Appeals. The jury convicted appellant only of the conduct alleged in the indictment. A conviction can never rest upon conduct which is not a criminal offense, or in whole or in part upon conduct not alleged in the indictment. *See Lawton v. State,* 913 S.W.2d 542, 551 (Tex.Crim.App.1995). To convict someone of a crime on the basis of conduct that does not constitute the crime offends the basic notions of justice and fair play embodied in the United States Constitution. *See United States v. Briggs,* 939 F.2d 222, 228 (5th Cir.1991). "It is the law of the land that no man's life, liberty or property be forfeited as a punishment until there has been a charge fairly made and fairly tried in a public tribunal." *In re Oliver,* 333 U.S. 257, 278, 68 S.Ct. 499, 92 L.Ed. 682 (1948). Error may be fundamental if it calls into question whether the accused had a fair trial and implicates the due course of the law provision of the Texas Constitution. *See* Tex. Const. art. I, § 19; *Hensarling v. State,* 829 S.W.2d 168, 173 (Tex.Crim.App.1992) (Maloney, J., dissenting).

■ It is a fundamental rule of criminal law and due process that one cannot be convicted of a crime unless it be shown beyond a reasonable doubt that the defendant committed each element of the alleged offense. *See Armstrong v. State,* 958 S.W.2d 278, 280 (Tex.App.-Amarillo 1997, pet. ref'd.) (citing U.S. Const. Amend. XIV; *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970)); *see also* Tex. Pen.Code Ann. § 2.01 (Vernon 1994); Tex.Code Crim. Proc. Ann. art. 38.03 (Vernon Supp.2000); *Alvarado v. State,* 912 S.W.2d 199, 206–07 (Tex.Crim.App.1995).

The constitutional deprivation, both federal and state, in the instant case is a defect affecting the framework within which the trial proceeded rather than simply an error in the trial process itself. *See Arizona v. Fulminante,* 499 U.S. 279, 310, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991).

Appellant is entitled to a new trial. It is not necessary that we reach appellant's other points of error.

The judgment of conviction is reversed and the cause is remanded.