IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. 050-01






ARTHUR GARCIA SANCHEZ, Appellant



v.



THE STATE OF TEXAS






ON DISCRETIONARY REVIEW


FROM THE FOURTH COURT OF APPEALS


BEXAR COUNTY






 Womack, J., delivered the opinion of the Court, in which Keller, P.J., and
Meyers, Price, Johnson, Keasler, Holcomb, and Cochran, JJ., joined.
Hervey, J., did not participate.



 This case presents the issue, whether the doctrine of a "right not recognized"
permits a defendant to complain for the first time on appeal that the charging instrument
failed to allege the required culpable mental state. We hold that it does not. 

 We first must discuss the procedural history of this case. The appellant originally
was charged with official oppression under Penal Code section 39.03(a)(3), (c). The
appellant filed a motion to quash the indictment, which the trial court granted in part and
denied in part. The State amended the indictment to allege that:

 on or about the 1st day of August, A.D., 1994, through on or about the 15th day of
February, A.D., 1995, ARTURO SANCHEZ, while acting under color of his office
as a public servant, to-wit: an officer, employee and agent of government, namely:
Chairman and board member of the Board of Trustees of VIA METROPOLITAN
TRANSIT, did intentionally subject DIANE GONZALEZ to sexual harassment,
namely: unwelcome sexual advances, requests for sexual favors, and other verbal and
physical conduct of a sexual nature, by stating to DIANE GONZALEZ (hereinafter
referred to as "COMPLAINANT") to the effect: that if COMPLAINANT did not
have a sexual affair with him he would fire her; that to get an office, a secretary and a
raise COMPLAINANT must have a sexual affair with him; that he had a sexual affair
with another VIA employee and he would have a sexual affair with COMPLAINANT
also; that he would have a sexual affair with COMPLAINANT; that COMPLAINANT
should have a sexual affair with him because people already thought they were having
a sexual affair; that COMPLAINANT must put on lipstick; that he would like
COMPLAINANT to wear low-cut dresses; that he would like COMPLAINANT to
wear black pantyhose and silk blouses because she looked better in them; that upon
seeing a bruise on COMPLAINANT'S leg, that he asked COMPLAINANT if she was
bruised from rough sex with her husband, and that he liked rough sex; and by
touching DIANE GONZALEZ with his hand on her face, submission to which was
explicitly and implicitly made a term and condition of DIANE GONZALEZ'
exercise and enjoyment of her rights, privileges, powers and immunities.


 The appellant filed a motion to quash the amended indictment, which the trial court
denied. The jury convicted the appellant and assessed punishment at one year in county jail
and a $300 fine. The sentence was suspended and the appellant was placed on community
supervision for two years. 

 On appeal (Sanchez I), the court of appeals reversed, holding that the statute's
provision regarding sexual harassment was (1) unconstitutionally vague on its face and as
applied in violation of the Fourteenth Amendment to the United States Constitution and (2)
unconstitutionally overbroad in violation of the First Amendment to the United States
Constitution. (1) We granted review (Sanchez II) and, holding that the provision in question
was constitutional, reversed the court of appeals' judgment and remanded the cause for
proceedings consistent with our opinion. (2) Of relevance to this case is our discussion in
Sanchez II of the required mental states under section 39.03(a)(3), (c). We held that, with
respect to the nature of conduct, "the statute requires intent on the part of the perpetrator
that the conduct be of a sexual nature, not merely that the recipient perceive the conduct as
sexual." (3) The required culpable mental state for the "unwelcome" nature of the conduct is
that the defendant must be aware that his conduct is in fact unwelcome. (4)

 On remand (Sanchez III), the court of appeals permitted the appellant to file a new
brief, in which the appellant raised two new points of error. He claimed that the trial court
erred in overruling his motion to quash because the indictment did not charge an offense
and because the indictment did not specify what "rights, privileges, powers, or immunities"
were at issue in the case. The court of appeals sustained these points and again reversed the
conviction and remanded the cause. (5) We granted the State's petition for discretionary
review to determine whether the appellant preserved for review his complaint that the
indictment failed to allege a culpable mental state, and whether the court of appeals
conducted the proper harm analysis in sustaining the appellant's second point of error. (6)

Preservation of Error


 We express no opinion as to whether the indictment was defective. The question is
whether the appellant preserved his first complaint about the indictment for appeal. In other
words, did his motion raise a substantive defect in the indictment as required under Code of
Criminal Procedure article 1.14(b)?

 The article provides:

 If the defendant does not object to a defect, error, or irregularity of form or
substance in an indictment or information before the date on which the trial on the
merits commences, he waives and forfeits the right to object to the defect, error, or
irregularity and he may not raise the objection on appeal or in any other
postconviction proceeding . (7)


 In Cook v. State, we discussed the historical significance of article 1.14(b):

 Prior to 1985, this Court consistently held that "substantive" defects in the charging
instrument failed to vest the trial court with jurisdiction and, therefore, a conviction
on a substantively defective charging instrument could be challenged for the first
time on appeal.... This rule developed over more than a century of decisions in which
we interpreted art. I, § 10 [of the Texas Constitution] to created a "constitutional"
requirement that a charging instrument allege all elements of the offense in order to
constitute an indictment.... Accordingly, where the charging instrument omitted an
element of the offense the indictment was void and the trial court lacked
jurisdiction....

 Frustrated with the common practice of defendants withholding substantive
defects at trial in order to vitiate the conviction, the Texas Legislature in 1985
proposed an amendment to art. V, § 12 of the Texas Constitution which authorized
the Legislature to prescribe by statute the effects of substantive defects in the
charging instrument. The amendment provided:


 An indictment is a written instrument presented to a court by a grand jury
charging a person with the commission of an offense. An information is a
written instrument presented to a court by an attorney for the State charging a
person with an offense. The practice and procedures relating to the use of
indictments, including their contents, amendment, sufficiency and requisites
are provided by law. The presentment of an indictment or information to a
court invests the court with jurisdiction of the cause.


 Art. V, § 12(b). In tandem with the constitutional amendment, the Legislature also
drafted implementing legislation in the form of an amendment to [Texas Code of
Criminal Procedure article 1.14].... Art. 1.14(b) automatically took effect upon the
voters [sic] approval of the amendment to art. V, § 12. (8)


Thus, the appellant had an affirmative duty to object to any defect in the indictment before
trial, and a failure to do so would prevent him from raising a claim of a defect for the first
time on appeal.

 The court of appeals held in Sanchez III that the appellant's motion to quash was
sufficient to preserve the right to complain of the defect in the indictment for appellate
review despite the fact that the motion did not specify the indictment's failure to allege the
required mental state of awareness as required by Sanchez II. The court provided two
reasons for its holding.

 First, based on the language of the motion, the appellant "was clearly seeking to
ascertain the nature and the cause of the accusations against him and it is apparent from the
context that the trial court and the prosecutor knew or should have known the basis of
appellant's motion." (9) We disagree.

 The fifth paragraph of the motion complained that the indictment failed to allege
criminal conduct:

 The indictment is defective because it is unconstitutionally vague in violation of the
Fourteenth Amendment of the United States Constitution. The vagueness allows the
prosecutors to use their own judgment, aversions, or preferences to determine what
statements are unwelcome sexual advances and requests for sexual favors.
Because the indictment attempts to criminalize noncriminal conduct and provides no
guidance on how to proceed, it is defective.


The motion does not object to the specific defect of which the appellant now complains --
that the indictment fails to allege a culpable mental state. The trial court held a pretrial
hearing on the motion in which defense counsel made the following argument with respect
to Paragraph Five of the motion:

 We still don't have definitions of unwelcomed [sic] sexual acts or requests for
sexual favors. So, what we have is the prosecutor has put in what they believe to be
those items, and when you look at the amended indictment, they seem to be
criminalizing a broad spectrum of conduct here that I think a normal person of
ordinary intelligence would not find to be criminal.


The argument focuses on the definitions of the elements of "unwelcome" and "sexual acts."
There is no discussion of the indictment's omission of the culpable mental state for the
"unwelcome" nature of the conduct. Based on the language in the motion and defense
counsel's supporting arguments reflected in the record, the court erred in summarily
concluding that the motion nevertheless was specific enough to apprise the trial court and
the State of the appellant's objection.

 The court of appeals' second basis for its holding is of more legal significance. The
court said, "[N]o waiver can be inferred or appellant faulted for failure to point out in his
motion to quash the omission in the indictment of elements later developed by case law
when the claim would have been novel and the claim would have been futile." (10) In other
words, the court asserts that the appellant should not be penalized for failing to object to
the indictment's compliance with requirements that were not "developed" until our decision
in Sanchez II. However, as we shall explain, this "right not recognized" doctrine is
inconsistent with our current law of error preservation.

 The courts of every jurisdiction in this country have some doctrine that permits
appellate courts to consider claims that fundamental rights were violated without objection.
In the criminal law of this state, such errors are called "fundamental errors." Before 1993
this Court had recognized more than a dozen kinds of fundamental error. This jurisprudence
"reflects piecemeal developments that each have somewhat different rationales. The overall
situation, then, simply [could] not be explained by reference to any unifying principle or
principles. Marin v. State suggest[ed] both the need to reconsider this case law and a
framework for that reconsideration." (11) As we have said elsewhere: (12)

 Marin has been a watershed decision in the law of error-preservation. After
Marin we have held that a right that formerly was thought to be "waivable
only" actually requires an objection at trial. (13) We have held that some
requirements that were formerly held to be absolute requirements are not. (14)
We have held that a party may be estopped from relying on an absolute
requirement. (15) On the other hand, we have recognized three more absolute
requirements since Marin: a constitutional requirement that a district court
must conduct its proceedings at the county seat, (16) the constitutional
prohibition of ex post facto laws, (17) and certain constitutional restraints on the
comments of a judge. (18)


We now consider questions of fundamental error in the Marin framework. (19)


 In Marin, we identified and defined the three categories of rights belonging to
litigants. The first category, "absolute requirements and prohibitions" or "systemic" rights,
are those rights "which are essentially independent of the litigants' wishes. Implementation
of these requirements is not optional and cannot, therefore, be waived or forfeited by the
parties. The clearest cases of  systemic requirements are laws affecting the jurisdiction
of the courts." (20) Systemic requirements "are to be observed even without partisan request"
and cannot "lawfully be avoided even with partisan consent." (21) Therefore, an appellant may
"complain that an absolute requirement or prohibition was violated, and the merits of his
complaint on appeal are not affected by the existence of a waiver or forfeiture at trial." (22) 

 In the second category, Marin classifies a litigant's "waivable" rights. "A principle
[sic] characteristic of these rights is that they cannot be forfeited. That is to say, they are
not extinguished by inaction alone. Instead, if a defendant wants to relinquish one or more
of them, he must do so expressly. His rights to the assistance of counsel and to a jury trial
are of this kind." (23) "Although a litigant might give [these rights] up, ... he is never deemed to
have done so in fact unless he says so plainly, freely, and intelligently" and the trial court
"has an independent duty to implement them absent an effective waiver by [the litigant]." (24)
These rights are not systemic, for they may be waived.

 Waivable rights  do not vanish so easily [as forfeitable ones]. Although a
litigant may give them up, and, indeed, has a right to do so, he is never
deemed to have done so in fact unless he says so plainly, freely, and
intelligently, sometimes in writing and always on the record. He need make
no request at trial for the implementation of such rights, as the judge has an
independent duty to implement them absent an effective waiver by him. As a
consequence, failure of the judge to implement them at trial is an error which
might be urged on appeal whether or not it was first urged in the trial court. (25)


 The remaining category consists of "forfeitable" rights. A party must "insist upon
[the implementation of these rights] by objection, request, motion, or some other behavior
calculated to exercise the right in a manner comprehensible to the system's impartial
representative, usually the trial judge.... The trial judge as an institutional representative has
no duty to enforce forfeitable rights unless requested to do so." (26) Thus, when a defendant
fails to assert his forfeitable rights at trial, "no error attends failure to enforce them and
none is presented for review on appeal." (27)

 The right to be charged by an instrument that is free of defects, errors, and
omissions is neither a "systemic" requirement nor a "waivable" right. By the requirement of
an act of the legislature under specific authority granted by an amendment of the
Constitution, any error in the charging instrument must be objected to in a timely (in this
case, before trial) and specific manner, and any unobjected-to error in the instrument is not
"fundamental."

 The "right not recognized" exception to the contemporaneous-objection rule relates
to a kind of fundamental error that is contrary to a specific act of the legislature, and that
Marin generally eliminated from our jurisprudence. The court of appeals should not have
relied on the doctrine to support its holding on the first point of appeal.

Harm Analysis


 In his second point of error on appeal, the appellant complained that the trial court
erred in denying his motion to quash because the indictment failed to specify which "rights,
privileges, powers, or immunities" were at issue in the case. (28) The court of appeals
sustained this point. (29) Because the State does not challenge the holding that the trial court
erred, we do not review that holding. Our review is of the question of harmless error. We
believe the court of appeals erred in its harm analysis. 

 A ground for an exception to the form of an indictment exists if the indictment fails
to allege facts sufficient to give the defendant notice of the precise offense with which he
is charged. (30) Under Code of Criminal Procedure article 21.19, even when there is a
showing that the trial court erred in overruling a challenge to the indictment based on a
defect in form, a conviction may be affirmed as long as the defect did not prejudice the
defendant's substantial rights. (31) In Adams v. State, we explained the proper harm analysis
under article 21.19:

 The first step ... is to decide whether the charging instrument failed to convey some
requisite item of "notice." If sufficient notice is given, this ends our inquiry. If not,
the next step is to decide whether in the context of the case, this had an impact on
the defendant's ability to prepare a defense, and, finally, how great an impact. (32)


The court of appeals compared the standards of harm under Adams (and article 21.19) and
the Rule of Appellate Procedure 44.2(a) and (b). (33) Characterizing the defects in the
indictment in this case as defects of substance, the court concluded, "If the error here is
subject to harm analysis at all, it matters not what harmless error rule is applied. Under any
standard of review applied, the error would be harmful." (34) In an apparent reference to the
Adams rule, the court held, "It is clear from the record that the omitted elements and the
lack of required notice impacted appellant's defense." (35) But the court's support for its
conclusion focused entirely on the effect of the indictment on the jury charge. The court
cited no evidence to show how the defects in the indictment negatively affected the
appellant's preparation for, or presentation of, his defense. A discussion of error in the jury
charge is proper in a case where charge error is at issue. Here we are faced with error in the
indictment. Because the court of appeals did not discuss relevant evidence that, in its
opinion, made the impact of the indictment error on the appellant's defense "clear from the
record," a further analysis and discussion of the record is needed.

Conclusion


 The court of appeals erred in its conclusion that the appellant's motion to quash was
sufficient to raise the defect of the omission of a culpable mental state in the indictment.
Furthermore, because the "right not recognized" doctrine conflicts with the law, the defect
was not "fundamental" error. The appellant did not preserve error, if any, on this issue under
article 1.14(b) and was not entitled to raise his first point. On the second point, the court of
appeals' harm analysis did not correctly apply the Adams standard in reviewing the defect
relating to the statutory elements "rights, privileges, powers, and immunities." Therefore,
the judgment of the court of appeals is vacated, and the case is remanded for
reconsideration of the issue of harm on the appellant's second point.

 Vacated and remanded to the court of appeals.


En banc.

Delivered November 12, 2003.

Publish.
1. See Sanchez v. State, 974 S.W.2d 307 (Tex. App.-- San Antonio 1998) (Sanchez I).
2. See Sanchez v. State, 995 S.W.2d 677 (Tex. Cr. App. 1999) (Sanchez II).
3. Id., at 685.
4. Ibid.
5. Sanchez v. State, 32 S.W.3d 687 (Tex. App.-- San Antonio 2000) (Sanchez III).
6. We granted review of the State's first and third grounds:


 (1) The court of appeals erred in holding that the appellant preserved for review his
contention that the amended indictment failed to allege conduct that was criminal
because it failed to allege the culpable mental state.

 

 (3) The court of appeals did not conduct a proper harm analysis of the alleged notice
defect in the indictment. Pet. at 3.
7. Tex. Code Crim. Proc. art. 1.14(b).
8. Cook v. State, 902 S.W.2d 471, 476 (Tex. Cr. App. 1995).
9. Sanchez III, 32 S.W.3d at 697 (citations omitted).
10. Id., at 697 (citing Ex parte Chambers, 688 S.W.2d 483, 486 (Tex. Cr. App. 1984)
(Campbell, J., concurring)).
11. Saldano v. State, 70 S.W.3d 873, 887-88 (Tex. Cr. App. 2002) (quoting George E. Dix
& Robert O. Dawson, Texas Pracice -- Criminal Practice and Procedure § 42.129 (1995).
12. Id., at 888-89 (footnotes renumbered).
13. See Gonzalez v. State, 8 S.W.3d 640 (Tex. Cr. App. 2000) (claim of multiple punishments
in violation of Fifth Amendment's Jeopardy Clause, which was based on court's charge that allowed a
general verdict to be returned on alternative theories of offense).
14. See Hatch v. State, 958 S.W.2d 813 (Tex. Cr. App.1997) (statutory requirement of verdict
by twelve jurors); Ex parte McJunkins, 954 S.W.2d 39 (Tex. Cr. App. 1997) (statutory requirement
of concurrent sentencing for offenses tried in a single criminal action).
15. See Prystash v. State, 3 S.W.3d 522 (Tex. Cr. App. 1999) (statutory requirement of jury
charge), cert. denied, 529 U.S. 1102 (2000); State v. Yount, 853 S.W.2d 6 (Tex. Cr. App. 1993)
(statute of limitation).
16. See Stine v. State, 908 S.W.2d 429 (Tex. Cr. App. 1995). The Court could not agree on a
basis for this holding. Three judges held the requirement was jurisdictional, see id., at 430 (opinion of
Overstreet, J.); one judge held the requirement was "systemic" but not jurisdictional, see id., at 433
(opinion of Meyers, J.); a fifth judge joined the judgment without opinion, see ibid. (Maloney, J.).
17. See Ieppert v. State, 908 S.W.2d 217 (Tex. Cr. App. 1995).
18. See Blue v. State, 41 S.W.3d 129 (Tex. Cr. App. 2000). The Court could not agree on the
basis of this requirement. Four judges held that the judge's comments tainted the presumption of
innocence and were fundamental error of constitutional dimension, see id. at 129 (opinion of Johnson,
J.); a fifth judge held that the judge's comments violated the right to an impartial judge, see id., at 135
(opinion of Keasler, J.).
19. See Saldano, 70 S.W.3d, at 889.
20. Marin, 851 S.W.2d, at 279.
21. Id., at 280.
22. Id.
23. Id., at 278-79 (citations omitted).
24. Id., at 280.
25. Ibid.
26. Id., at 279-80.
27. Id., at 280.
28. See Sanchez III, 32 S.W.3d at 690.
29. See id., at 698-99.
30. See Adams v. State, 707 S.W.2d 900, 901 (Tex. Cr. App. 1986).
31. Tex. Code Crim. Proc. art. 21.19; see also Adams, 707 S.W.2d at 901-04.
32. Adams, 707 S.W.2d at 903.
33. See Sanchez III, 32 S.W.3d at 699-700.
34. Sanchez III, 32 S.W.3d at 700.
35. Id.