IN THE 
COURT OF CRIMINAL APPEALS
OF TEXAS




NO. PD-1754-05


ARTHUR GARCIA SANCHEZ, Appellant

v.

THE STATE OF TEXAS




ON STATE'S PETITION FOR DISCRETIONARY 
REVIEW
AND DISCRETIONARY REVIEW ON COURT'S OWN 
MOTION
FROM THE FOURTH COURT OF 
APPEALS
BEXAR COUNTY


Price, J., 
delivered the 
opinion of the Court, in which Keller, P.J., and Meyers, 
Womack, Johnson, Holcomb and Cochran, 
J.J. joined. 
Keasler, J., dissented. 
Hervey, J., did not 
participate. 

O 
P I N I O N

This cause is 
before us for a third time. The appellant was convicted for the offense of 
official oppression, a Class A misdemeanor, 
(1) and sentenced to one year in jail, probated, and a $3,000 fine. On 
direct appeal, the Fourth Court of Appeals reversed the conviction and dismissed 
the prosecution, holding that the statute was unconstitutionally vague on its 
face and as applied, in violation of the Due Process Clause of the Fourteenth 
Amendment, and also overbroad, in violation of the First Amendment. 
(2) We granted discretionary review, held that the statute was neither 
unconstitutionally vague on its face and as applied nor unconstitutionally 
overbroad. We reversed the judgment of the court of appeals, and remanded the 
cause for the court of appeals to address the appellant's further contentions. 
(3)
On remand, the 
court of appeals once again reversed the conviction, this time remanding the 
cause for a new trial. 
(4) We granted discretionary reviewed a second time, and vacated the 
judgment of the court of appeals, remanding the cause to that court for 
reconsideration of its harm analysis. 
(5) On second remand, the court of appeals reconsidered the harm 
issue, found the error to be harmful a second time, and reversed the conviction 
again. 
(6) In the alternative, the court of appeals reversed the conviction 
on the basis of two other, unassigned errors it perceived in the jury charge. 
(7) We granted the State's petition for discretionary review for a 
third time, on three grounds. First, we granted review of the question whether 
the court of appeals properly conducted the harm analysis on remand. Second and 
third, we granted review of the question whether the court of appeals correctly 
held that the errors it perceived in the jury charge were reversible. On our own 
motion we granted review of a fourth issue regarding whether the court of 
appeals was authorized to reverse the conviction on the basis of unassigned 
error. 
(8) Should we find that the court of appeals properly reversed the 
appellant's conviction on any one of the three bases upon which it held that a 
reversal was warranted, then we need not reach the other two substantive 
issues.
We hold that the 
court of appeals was authorized to reach the unassigned jury-charge issues in 
this cause, and that it properly reversed the 
conviction based upon the first unassigned error it identified. Accordingly, we 
will overrule the State's second ground for review, and dismiss the State's 
first and third grounds as moot.

RELEVANT 
PROCEDURAL HISTORY

The appellant was 
indicted for official oppression in that, acting as a public servant and under 
color of his office or employment, he intentionally subjected Diane Gonzalez to 
sexual harassment. 
(9) "Sexual harassment" is defined to mean "unwelcome sexual advances, 
requests for sexual favors, or other verbal or physical conduct of a sexual 
nature, submission to which is made a term or condition of a person's exercise 
or enjoyment of any right, privilege, power, or immunity, either explicitly or 
implicitly." 
(10) On his initial appeal, the appellant argued that this definition 
rendered the statute unconstitutionally vague, both on its face and as applied 
to the facts of his case. The court of appeals agreed, and reversed the 
conviction and ordered a judgment of acquittal. 
(11)
We reversed this 
judgment. 
(12) In the course of rejecting the appellant's contention that the 
statute is unconstitutional, we resolved an ambiguity in the scope of the 
requirement that the sexual conduct be "unwelcome." 
(13) We recognized that on the face of the statute it was unclear 
whether the elemental requirement of "unwelcome" was meant to modify only 
"sexual advances," or was also meant to modify "requests for sexual favors, or 
other verbal or physical conduct of a sexual nature[.]" We construed the statute 
to mean the latter. We also held that the culpable mental state of "knowing" 
applied to the element that the sexual conduct be unwelcome; 
(14) in other words, we construed the statute to require a showing 
that the appellant was aware that the alleged sexual conduct to which he was 
subjecting his victim was unwelcome. 
(15)
On remand, the 
court of appeals again reversed the conviction, this time remanding for a new 
trial. 
(16) The court of appeals held, inter alia, that 
the indictment was substantively defective for failing to allege the elements 
that this Court had construed to be contained in the statute. 
(17) Among the missing elements are two that are relevant here. First, 
the indictment failed to expressly allege that all of the alleged statutory 
variants of sexual conduct (not just "sexual advances") were unwelcome. Second, 
it failed to allege that the appellant knew that 
any 
of the instances of alleged sexual conduct were unwelcome. However, in a second 
petition for discretionary review, we once again reversed the court of appeals' 
reversal. 
(18) We sustained the State's contention that the appellant had failed 
to preserve his argument that the indictment was substantively defective, and 
held that the court of appeals therefore erred to reach the merits of that 
claim. 
(19) We vacated the court of appeals' judgment and again remanded the 
cause for the court of appeals, this time for that court to reconsider its harm 
analysis with respect to a second ground for reversal that it had identified in 
Sanchez 
III. 
(20)
On second remand, 
the court of appeals reversed the conviction for a third time. 
(21) The court of appeals identified three independent bases which it 
believed entitled the appellant to a new trial. Two of those bases were not 
raised in the appellant's brief, but the court of appeals reached them as 
unassigned error. 
(22) The first unassigned error the court of appeals identified was a 
failure of the jury charge to require the jury to find, as a prerequisite to 
convicting the appellant, that he committed each and every element of sexual 
harassment as required by our construction of the statute in Sanchez II. 
(23) Among the elements the court of appeals found lacking in the jury 
charge were the same two we have already alluded to with respect to the 
indictment. First, the jury charge failed to unambiguously require the jury to 
find that some of the alleged statutory variants of sexual conduct that it might 
rely upon to convict were unwelcome. 
(24) Instead, like the face of the statute itself, the jury charge 
only expressly required the jury to find that any "sexual advances" were 
unwelcome, and did not unambiguously require it to find that any "requests for 
sexual favors, or other verbal or physical conduct of a sexual nature" upon 
which it might rely to convict were likewise unwelcome. Second, it failed to 
require the jury to find that the appellant knew that 
any 
of the instances of alleged sexual conduct were unwelcome. 
(25) The court of appeals concluded that these omissions in the jury 
charge caused the appellant egregious harm, and therefore reversed the 
conviction under Almanza v. 
State. 
(26)

UNASSIGNED 
ERROR

Shortly after the 
courts of appeals acquired criminal appellate jurisdiction in Texas, it was 
established in Carter v. State 
(27) that those courts, like this Court when we are acting in our 
direct-appeals capacity, are authorized under the Texas Constitution to reach 
unassigned error. We recently "reaffirmed" that "appellate courts are free to 
review 'unassigned error'-a claim that was preserved in the trial below but was 
not raised on appeal." 
(28) But errors that are subject to procedural default may not be 
remedied by the appellate court as unassigned error unless the error was in fact 
preserved in the trial court. 
(29)
At issue in this 
case is jury-charge error-the failure to give "a written charge distinctly 
setting forth the law applicable to the case[.]" 
(30) Under our construction of Article 36.19 of the Code of Criminal 
Procedure in Almanza v. State, 
such a jury-charge error is regarded as "fundamental"-that is to say, it may 
subject the conviction to reversal on appeal regardless of whether the appellant 
raised an objection to it in the trial court-if that error caused the appellant 
"egregious harm." 
(31) The court of appeals did not err to reach this question as 
unassigned fundamental error on appeal. 
(32) Of course, absent a trial objection, the court of appeals was not 
free to reverse the conviction on the basis of jury-charge error absent a 
finding of the requisite egregious harm. 
(33) We turn next to that question.

FUNDAMENTAL JURY 
CHARGE ERROR


A. The 
Law

As the court of 
appeals recognized, jury-charge error is egregiously harmful if it affects the 
very basis of the case, deprives the defendant of a valuable right, or vitally 
affects a defensive theory. 
(34) In examining the record to determine whether jury-charge error is 
egregious, the reviewing court should consider the entirety of the jury charge 
itself, the evidence, including the contested issues and weight of the probative 
evidence, the arguments of counsel, and any other relevant information revealed 
by the record of the trial as a whole. 
(35) In this case, the court of appeals did not examine the state of 
the record with respect to the two errors we address today, holding instead that 
it was sufficient to establish egregious harm that the jury charge authorized 
the jury to convict without finding every requisite element of the offense 
beyond a reasonable doubt. 
(36) Our own review of the record confirms that, considering also the 
conflicts in the evidence, and the arguments that counsel 
made, the error was egregious.

B. The Jury 
Charge

The jury charge 
abstractly defined sexual harassment in the same ambiguous terms that the 
statute utilizes. 
(37) Thus, it did not clearly inform the jury that it must find that, 
not only the appellant's "sexual advances," but also his "requests for sexual 
favors, or other verbal or physical conduct of a sexual nature," must be 
"unwelcome" in order to support a guilty verdict. Moreover, nowhere does the 
abstract portion of the jury charge inform the jury that it must find that the 
appellant was aware that 
any 
of his sexual conduct was unwelcome. 
(38) These are elemental facts. The application paragraph of the jury 
charge does nothing to ameliorate these deficiencies. 
(39)
C. The Contested 
Evidence

Evidence 
developed during the course of the trial could easily have caused the jury to 
question both whether the sexual conduct was unwelcome, and whether the 
appellant would have been aware that it was unwelcome, had it been properly 
instructed that it had to make such findings in order to convict the appellant. 
As accurately summarized by the court of appeals in Sanchez I, the 
evidence at trial showed:
The complainant 
Gonzalez was hired by the Board of Trustees of the [VIA] Metropolitan Transit in 
San Antonio as an assistant to the Board in securing federal grant money. She 
was placed in the Public Affairs Division of [VIA], with instructions to report 
to appellant, the Board Chairman. The allegations of the indictment were chiefly 
supported by Gonzalez's testimony since the matters arose in private 
conversations. Gonzalez commenced taping her conversation with appellant in 
December 1994 or January 1995. The tapes do not support the indictments's allegations. Several witnesses 
heard appellant tell Gonzalez to put on lipstick or makeup. The grand jury 
testimony by appellant was introduced. He acknowledged that on an occasion he 
told Gonzalez to put on lipstick because she looked pale.
Gonzalez 
acknowledged that she had been hired by the Board and could only be fired by the 
Board, but knew appellant as Chairman, had great influence and that appellant 
had so informed her. There was testimony that Gonzalez traveled by plane with 
appellant to a transportation conference in Washington, D.C., in September 1994, 
going earlier and coming back later than other representatives of [VIA] at the 
conference. Gonzalez was instructed to attend after work meetings at the bar at 
the Mi Tierra Restaurant several nights a week. Other evidence showed that 
appellant frequently called Gonzalez at her home at night and that there was 
concern on the part of one Board member about the relationship. Other testimony 
indicated that appellant prevented Gonzalez from attending some Board meetings 
and dictated to her which employee or employees with whom she could not have 
lunch.
There was no 
question that Gonzalez had demanded, requested, or expressed a desire repeatedly 
for a raise, an enclosed office, and a private secretary. One Board member 
testified that before Gonzalez started her $52,000 job, she requested a raise in 
order to influence the individuals with whom she would come into contact in the 
course of her employment. The request was denied. When Gonzalez commenced her 
employment, there was only one enclosed office in the Public Affairs Division 
which at the time was occupied by appellant. A smaller enclosed office was built 
for appellant and the larger one was assigned to Tom Campos, a staff member by 
the general manager of [VIA] and appellant. The secretary whom Gonzalez shared 
with others testified that she typed only three letters for Gonzalez in the 
eight months or so that Gonzalez was employed by [VIA].
Other evidence 
indicated that Gonzalez was constantly inquiring about appellant's whereabouts, 
spent a great deal of time in appellant's office with the door closed, seemed 
happy and "jolly" around appellant, and fawned over him. She was always offering 
to take appellant to lunch or to drive him places. Appellant had a disability as 
a result of having polio when he was a child. Some witnesses testified that 
Gonzalez followed appellant around the office, even waiting for him outside the 
men's restroom. On one occasion, appellant was heard to tell Gonzalez that "he 
didn't need a shadow, that he had two at home, his mother and his dog." Gonzalez 
was also seen playing "patty cake" with appellant at the bar at Mi 
Tierra.
There was 
evidence of dissension in the office between Gonzalez and other women employees, 
some of it arising from Gonzalez's insistence that she was another employee's 
supervisor. Gonzalez was to complete a legislative agenda project for the Board 
regarding federal grant money. The report was delayed month by month and, when 
it was tendered to the Board in January 1995, it was found unacceptable. There 
was evidence that the Board was generally becoming dissatisfied with Gonzalez's 
work.
Gonzalez terminated her employment on February 15, 1995, 
and filed a EEOC complaint. Her husband and brother, both lawyers, presented a 
1.2 million dollar claim to [VIA] which was refused. A civil suit was filed and 
the instant criminal indictment came later. (40)
Gonzalez's own 
testimony supplied sufficient evidence from which the jury could have rationally 
concluded that all of the appellant's sexual conduct listed in the application 
paragraph occurred, and that it was all unwelcome. Moreover, the jury could have 
inferred from Gonzalez's testimony that the appellant knew his sexual 
conduct was unwelcome. But as the above summary shows, evidence from other 
sources tended to impeach Gonzalez's testimony. That evidence suggested, 
alternatively, either that the appellant's conduct was not really of a sexual 
nature at all, or that, if it was of a sexual nature, it was not unwelcome, 
and/or the appellant was not aware that it was unwelcome. Thus, the parties 
clearly joined issue, inter alia, on the elemental questions of whether 
the verbal sexual conduct was unwelcome, and whether the appellant knew it was 
unwelcome. But the jury was not required to pass on that issue before convicting 
the appellant.

D. The Jury 
Argument

The bulk of the 
final arguments from both parties was devoted to the evidence with respect to 
whether the sexual conduct occurred at all, or was, instead, a false allegation 
brought by Gonzalez to punish the appellant because she had not received the job 
amenities she expected and to deflect attention from her poor job performance. 
But early in her summation to the jury, counsel for the appellant also argued 
that any sexual conduct on the appellant's part had not been 
unwelcome:
So think about 
it, if you believe the statements, is it even sexual or an advance. And then 
think about the unwelcome part. It has to be unwelcome. And when you do that, 
think about Diane Gonzalez's behavior in the office. Think about the fact that 
she sat in his office, and she laughed, and she followed him around, and she 
looked for him, and she enjoyed his company; they acted friendly to each other, 
and decide whether it is unwelcome.
She came back to 
this theme later when she argued:
Think about her 
behavior at work as extremely difficult as her behavior on the witness stand, 
very emotional, very upset. We were told by [a defense witness] that [Gonzalez] 
followed [the appellant] around. So much that he finally said to her at one 
point, "I don't need a shadow. I have two at home, my mother and my 
dog."
She would wait 
outside the men's room for him. She would follow him down to the car, follow him 
to the elevator. [Another defense witness], her friend, she would sometimes go 
out and say, "Your husband is on the phone." Another great excuse to get away 
from him. But instead she would say, "Oh, tell him I will call him later." She 
kept right on chatting.
She was not 
afraid or intimidated. She would sit in his office, she would-she would close 
the door and people would hear her laughing and enjoying it. They had a playful 
bantering between the two of them. She was offering him rides, offering to take 
him to lunch, offering to take him to meetings.
All of this 
behavior says she was not afraid of him, she was not afraid. She was so upset a 
year later, crying and upset here, but at the time she worked with him on a 
day-to-day basis, she seemed to enjoy his company and enjoy him being 
around.
Among other issues in the case, this argument relates to 
the issue of the unwelcomeness of any verbal sexual conduct on the appellant's 
part, as well as whether he would have been aware that his sexual conduct was 
unwelcome. But if the jury was inclined to construe the ambiguous jury 
instructions not to require a showing that any verbal sexual conduct on the 
appellant's part was unwelcome, it could have easily sidestepped the first 
issue. And the jury was never told it had to find the appellant was 
aware that any of his sexual conduct was unwelcome, and so it 
need not have addressed that issue at all before convicting 
him. (41)

E. Egregious 
Harm

The 
jury was instructed in such a way that it was not required to find at least two 
elements of the offense of official oppression to be proven beyond a reasonable 
doubt prior to convicting the appellant. As the evidence was developed at trial 
and argued to the jury, both those elements were disputed. The jury charge 
authorized the jury to convict the appellant without resolving that dispute. On 
the facts of this case it is no exaggeration to say that the appellant was 
deprived of his valuable right to have a jury determination of every element of 
the alleged offense, and that one of his defensive theories was vitally 
affected, to his substantial detriment. The court of appeals did not err to 
conclude that the error in the jury charge was sufficiently egregious as to 
deprive the appellant of a fair and impartial trial. (42)

CONCLUSION

Accordingly, the 
judgment of the court of appeals is affirmed.
Delivered: 
December 13, 2006
Published 

1. Tex. Pen. Code § 39.03(a)(3) and (d). 
2. Sanchez v. State, 
974 S.W.2d 307 (Tex. App.--San Antonio 1998) (Sanchez I). 
3. Sanchez v. State, 
995 S.W.2d 677 (Tex. Crim. App. 1999) (Sanchez II). 
4. Sanchez v. State, 
32 S.W.3d 687 (Tex. App.--San Antonio 2000) (Sanchez III). 
5. Sanchez v. State, 
120 S.W.3d 359 (Tex. Crim. App. 2003) (Sanchez IV). 
6. Sanchez v. State, 
182 S.W.3d 34 (Tex. App.--San Antonio 2005) (Sanchez V). 
7. Id. at 58-64. 
8. In a fourth ground for review the State had argued that 
the court of appeal erred to reach the unassigned errors in the jury charge 
without affording the parties and opportunity for further briefing. We refused 
discretionary review of this fourth issue, but granted review on our own motion 
of the question whether the court of appeals should have entertained unassigned 
error in the first instance. 
9. Tex. Pen. Code § 39.03(a)(3). 
10. Tex. Pen. Code § 39.03(d). 
11. Sanchez I, 974 
S.W.2d at 313-20. 
12. Sanchez II, 
supra. 
13. Sanchez II, 995 
S.W.2d at 683-85. 
14. See Tex. Pen. 
Code § 6.03(b) ("A person acts knowingly, or with knowledge, with respect to the 
nature of his conduct or to circumstances surrounding his conduct when he is 
aware of the nature of his conduct or that the circumstances exist. A person 
acts knowingly with respect to a result of his conduct when he is aware that his 
conduct is reasonably certain to cause the result.") 
15. Sanchez II, 995 
S.W.2d at 685 ("Moreover, because the statute requires that the perpetrator 
intentionally subjects the victim to 'unwelcome' sexual conduct, the perpetrator 
must necessarily be aware that the sexual conduct is in fact unwelcome to be 
liable under the statute."); see also id. at 
685-86 n.7. 
16. Sanchez III, 
supra, at 701. 
17. Id. at 694-98. 
18. Sanchez IV, 
supra, at 368. 
19. Id. at 363-67. 
20. Id. at 367-68. 
21. Sanchez V, 
supra, at 64. 
22. Id. at 58-64. 
23. Id. at 59-62. 
24. Id. at 61. 
25. Ibid. 
26. 686 S.W.2d 157 (Tex. Crim. App. 1985) (opinion on 
State's motion for rehearing). 
27. Carter v. State, 
656 S.W.2d 468 (Tex. Crim. App. 1983). See also George 
E. Dix & Robert O. Dawson, 43A Texas Practice: Criminal Practice and 
Procedure § 43.415, at 655 (2d ed. 2001) (" . . . appellate courts continue to 
have the authority to reverse convictions for unassigned error.") 
28. Pena v. State, 
191 S.W.3d 133, 136 (Tex. Crim. App. 2006), citing Rezac v. 
State, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990). 
29. Pena v. State, 
supra; 
Carter v. State, supra, at 469 
n.4. 
30. Tex. Code Crim. Proc. art. 36.14. 
31. 686 S.W.2d at 171-72 (construing Tex. Code Crim. Proc. 
art. 39.19). 
32. We recently reviewed an Almanza analysis 
of another court of appeals that had reached the merits of a question of 
fundamental jury-charge error. Olivas v. State, 
202 S.W.3d 137 (Tex. Crim. App. 2006). 
33. Cf. Bluitt v. 
State, 137 S.W.3d 51, 53 (Tex. Crim. App. 2004) (even when an appellant 
affirmatively states on the record that he has no objection to the jury charge, 
he may raise jury-charge error on appeal, but appellate court may not reverse 
the conviction absent egregious harm). 
34. Sanchez I, 
supra, at 61, 
citing 
Hutch v. 
State, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996) (plurality opinion). 
See 
also, Almanza v. State, 
supra, at 172; 
Ngo v. 
State, 175 S.W.3d 738, 750 (Tex. Crim. App. 2005). 
35. Bailey v. State, 
867 S.W.2d 42, 43 (Tex. Crim. App. 1993), citing Almanza v. 
State, supra, at 171; 
Ngo v. 
State, supra, at 750 n. 
48.. 
36. Sanchez V, 
supra, at 62. The 
court of appeals cited our plurality opinion in Hutch in support 
of the proposition that sometimes the jury charge alone will be sufficient to 
establish egregious error. Id. at 61, 
citing 
Hutch v. State, supra, at 171. We 
need not rely upon that proposition in our own review, as explained in the text 
post. 
37. C.R., at 184. 
38. Culpable mental states are elemental. Tex. Pen. Code § 
1.07(22)(B). The failure to instruct the jury to find every necessary culpable 
mental state constitutes jury-charge error. George E. Dix & Robert O. 
Dawson, 43 Texas Practice: Criminal Practice and Procedure § 36.12 (2d ed. 
2001). 
39. The application paragraph reads, in its 
entirety:
Therefore, if you believe from the 
evidence beyond a reasonable doubt that on or about the 1st day of 
August, A.D., 1994, through on or about the 15th day of February, 
1995, in Bexar County, Texas, the defendant, Arturo Sanchez, while acting under 
color of his office as a public servant, to-wit: an officer, employee or agent 
of government, namely: Chairman and Board Member of the Board of Trustees of VIA 
Metropolitan Transit, did intentionally subject Diane Gonzalez to sexual 
harassment, namely: unwelcome sexual advances, requests for sexual favors, or 
other verbal or physical conduct of a sexual nature, by stating to Diane 
Gonzalez to the effect: that if Diane Gonzalez did not have a sexual affair with 
him he would fire her; or that to get an office, a secretary and a raise Diane 
Gonzalez must have a sexual affair with him; or that he had a sexual affair with 
another VIA employee and he would have a sexual affair with Diane Gonzalez; or 
that Diane Gonzalez should have a sexual affair with him because people already 
thought they were having a sexual affair; or that Diane Gonzalez must put on 
lipstick; or that he would like Diane Gonzalez to wear low-cut dresses; or that 
he would like Diane Gonzalez to wear black pantyhose or silk blouses because she 
looked better in them; or that upon seeing a bruise on Diane Gonzalez' leg, that 
he asked Diane Gonzalez if she was bruised from rough sex with her husband, and 
that he liked rough sex; or by touching Diane Gonzalez with his hand on her 
face, submission to which was explicitly or implicitly made a term or condition 
of Diane Gonzalez [sic] exercise or enjoyment of her rights, privileges, powers 
or immunities, then you will find the defendant guilty of official oppression as 
charged in the indictment.
If you do not so believe, or if 
you have a reasonable doubt thereof, you will find the defendant not guilty. 
40. Sanchez I, supra, at 311-2 n. 6. 
41. The jury sent out a note during deliberations in which 
it inquired: "Is official oppression the same as 'harassment' +/or 'sexual 
harassment'?" The trial court properly instructed the jury to refer back to the 
definitions in the jury charge. The only inference we are able to draw from this 
note is that the jurors apparently experienced at least some degree of confusion 
with respect to the parameters of the offense the appellant was charged with. 
Exactly what the nature of their confusion was, we cannot say as an empirical 
matter. 
42. In view of this disposition, we express no opinion with 
respect to the other grounds upon which the court of appeals relied for reversal 
of the appellant's conviction, and dismiss the State's other grounds for review 
as moot. We presume that in any re-prosecution of the case the defect of form in 
the indictment will be remedied, and therefore the question of harm under 
Adams v. State, 707 S.W.2d 900 (Tex. Crim. App. 1986), will become 
academic. With respect to the court of appeals' second unassigned error, that 
the jury charge erroneously permitted the jury to convict the appellant with a 
non-unanimous verdict, we would simply direct the trial court's attention, in 
the event of re-prosecution, to our recent opinion in Jefferson v. 
State, 189 S.W.3d 305 (Tex. Crim. App. 2006). Particularly relevant is 
Judge Cochran's concurring opinion. Id. at 316 (Cochran, J. concurring) 
("Generally, adverbial phrases, introduced by the preposition 'by,' describe the 
manner and means of committing the offense. They are not the gravamen of the 
offense, nor elements on which the jury must be 
unanimous.")